JESSE THOMAS LEE V. WOODROW WILSON REGAN

No. 7914SC1087

(Filed 15 July 1980)

1. **Damages § 3– aggravation of preexisting disease**

　　Where plaintiff presented competent medical evidence that his preexisting syringomyelia was aggravated by a collision resulting from the negligence of defendant, defendant is liable for the damages due to enhancement or aggravation of the condition.

Lee v. Regan

2. **Damages § 3.1– hospitalization costs – determination of preexisting disease – competency**

Where plaintiff's action for damages arising from an automobile accident was based on a cervical sprain and aggravation of his existing syringomyelia, hospitalization costs following the accident to determine whether plaintiff indeed had syringomyelia were competent evidence of plaintiff's damages resulting from the accident.

3. **Damages § § 12, 13– items of damages – causal connection to accident – sufficiency of complaint**

There was a sufficient causal connection between plaintiff's injuries suffered in an automobile accident and evidence of why plaintiff and his wife stopped teaching, of bladder problems, of salary since the accident, of days missed from his teaching job and of pain and suffering and mental anguish since the accident so that such evidence was properly admitted where plaintiff presented expert medical testimony that the accident could have aggravated his preexisting degenerative disease, syringomyelia, and such evidence was directly related to the worsening syringomyelia for which defendant was liable to the extent his negligence aggravated the preexisting condition. Furthermore, such items of damages were adequately pled by plaintiff where he alleged that he "suffered extensive injuries, great pain of the body and mind, was prevented from transacting his business and incurred expenses for medical attention, hospitalization and damages to his person in an amount not yet determined," and a subsequent amendment alleged damages of $75,000.

4. **Evidence §§ 49.1, 50.2; Damages § 16.1– hypothetical question – competency of response**

Plaintiff's hypothetical question to a medical expert as to whether a cervical sprain received by plaintiff in the accident in question could have aggravated plaintiff's preexisting disease of syringomyelia was not improper where it included only facts in evidence or which the jury could have inferred from the evidence, and the expert's response that the cervical sprain "can or could" aggravate the syringomyelia and "hasten the development of fresh worsening of neurological signs" was not so speculative as to be inadmissible to show causation where the witness further testified that he was speaking of what was medically possible and what will happen and that "it would be less likely" that the accident would not have aggravated the syringomyelia.

APPEAL by defendant from *Farmer, Judge.* Judgment entered 4 June 1979 in Superior Court, DURHAM County. Heard in the Court of Appeals 13 May 1980.

This action arises out of an accident occurring about 9:40 p.m. on 21 April 1976 at the intersection of Duke and Frasier Streets in Durham, North Carolina. Plaintiff's complaint

alleged that defendant negligently caused the accident and injuries by driving at an excessive speed, failing to stop for a stop sign at the intersection and driving while under the influence of alcohol. Plaintiff alleged he had "suffered extensive injuries, great pain of the body and mind, was prevented from transacting his business and incurred expenses for medical attention, hospitalization and damage to his personal property in an amount not yet determined." He prayed for $30,000.00 in damages. Defendant filed an answer denying any negligence on his part and alleging as a defense to the action the contributory negligence of plaintiff in failing to decrease speed at the intersection and in driving with improper lighting. Plaintiff's complaint was subsequently amended with the permission of the trial court to request the sum of $75,000.00 in damages. A jury trial was held where the following evidence was presented.

Defendant was called as an adverse witness. He testified that he stopped at the intersection in question and, seeing no other cars, proceeded to enter the intersection where he was struck by plaintiff's car which was travelling between sixty and seventy miles per hour without lights. Defendant admitted he was charged with driving under the influence and failing to stop for a stop sign. He denied entering pleas of guilty but admitted paying a fine. The Chief Clerk of the Durham County District Court testified that according to court records charges arising out of this accident were brought against defendant who had pled guilty to reckless driving and a stop sign violation and was fined $100.00 and costs.

Plaintiff testified to the following. On the night of the collision, he was approaching the intersection at a speed of about thirty miles per hour with his car lights on. When he noticed defendant's car, he slowed down and, when he realized defendant was not going to stop for the stop sign, he swerved to avoid the impact. After the collision, his knees were pinned to the dashboard, his abdomen was in the steering wheel and he had pain in his neck, back and head for which he was hospitalized for twelve or thirteen days following the collision at a cost of $651.00. Prior to the collision, he was hospitalized in 1965 for an infection to his left index finger and in 1970 for a limp and headaches. A 1973 automobile collision from which he received

a whiplash injury did not result in hospitalization. Before the
1976 collision, he could walk without a cane, mow the lawn,
climb steps, cook, use shop tools and raise his right hand. After
the 1976 collision, he could do none of these things. He was
unable to button his shirt or tie his shoes and neckties. His wife
had to quit her job to take care of him. He has continuous pain in
his neck and back. He has also suffered from urinary tract
problems. He has a monthly drug bill of $21.00. In August 1976,
defendant was again hospitalized at a cost of $1,511.16. He had
further expenses of $740.00 to the Durham Clinic, $35.00 for
ambulance service and $57.00 for the Durham Urology Clinic,
all of which he indicated were related to the 1976 collision.
Plaintiff continued teaching school until 1978 when his doctor
told him to stop.

On cross-examination, plaintiff's testimony was to the fol-
lowing effect. During the hospitalization following the acci-
dent, he was treated by Dr. Robert E. Price, Jr., a neuro-
surgeon at the Durham Clinic. Dr. Price diagnosed a cervical
sprain injury as a result of the 1976 accident. In 1964, plaintiff
began having trouble with his knees locking. In 1965, he had
prostate trouble. In 1970, he noticed the muscles in his left hand
were weakening and that when he was hospitalized in 1970 for
headaches and a limp, he was diagnosed as having syrin-
gomyelia, a chronic progressive disease of the spinal cord.

An eyewitness to the accident testified that he was follow-
ing plaintiff's car which had its taillights on and that defend-
ant failed to stop. The investigating officer testified that when
he arrived on the scene, he observed plaintiff fall as he attempt-
ed to get out of his car. The officer testified that he smelled
alcohol on the breath of defendant who registered a blood alco-
hol level of .20 when given a breathalyzer test following the
accident. According to the officer, the front of defendant's truck
struck the left side of plaintiff's car.

A teacher who worked with plaintiff testified that in 1975
plaintiff walked slowly with a limp and occasionally had trouble
holding things. After the 1976 accident, according to this wit-
ness, plaintiff walked with a cane, moved slower and had great
difficulty holding things. Testimony was introduced on the

Lee v. Regan

progressive number of workdays plaintiff missed following the accident and that his 1978 monthly teacher's salary was over $1,100.00.

Dr. Ng Khye Weng testified about his treatment of plaintiff which began on 19 May 1978. Plaintiff had been referred to Dr. Weng by Dr. Price for reevaluation of the neurogenic bladder and advanced syringomyelia diagnosis made at the time of the August 1976 hospitalization of plaintiff. In response to a hypothetical question, Dr. Weng stated that the cervical sprain plaintiff suffered in the 1976 collision "can or could" aggravate the syringomyelia and "hasten the development of fresh worsening of neurological signs" and that plaintiff's condition will not improve with time. On cross-examination, Dr. Weng testified.

I have used the word could or might in response to Mr. Darsie's questions and this in connection with the automobile accident of April 21 and the plaintiff's existing condition of syringomyelia and as to whether in expressing my opinion and using could or might as to whether I mean it is possible that the trauma of the accident could have aggravated Mr. Lee's existing condition of syringomyelia, and as to when I responded to counsel's questions I meant to say that it is possible that that could have aggravated Mr. Lee's existing active condition of syringomyelia, my answer is yes sir. I cannot be sure. As to whether I cannot state an opinion that it did, my answer is no sir. I cannot state absolutely, because I did not see him then. And so, just basing it on the stories that happened in the past and knowing that Mr. Lee has a cervical syringomyelia, any trauma like a neck sprain or a whiplash could aggravate the condition, but I cannot say it definitely did it, because I wasn't around.

He further testified that when he was using the word "could," he was speaking in the sense that it was medically possible. In his opinion, "it would be less likely" that the accident trauma would not aggravate his condition. Dr. Weng testified that the August 1976 hospitalization had nothing to do with the cervical sprain but was solely to reevaluate the syringomyelia diagnosis.

Lee v. Regan

Other witnesses, including defendant's wife, offered testimony which tended to corroborate the previously described testimony about the accident and its effect on plaintiff.

Defendant then presented evidence of four witnesses, two of whom set the foundation for the introduction into evidence of certain medical records and one of whom lived near the intersection in question and could testify about the scene immediately after the accident. The fourth witness for defendant was Dr. Robert E. Price. He testified that on the night of the collision, he treated plaintiff in the emergency room and that he had plaintiff admitted to the hospital for a possible cervical fracture which was ultimately diagnosed as a sprain. In his opinion, plaintiff's complaints are related to the syringomyelia and have nothing to do with the cervical sprain. According to his testimony,

> I do have an opinion satisfactory to myself as to whether [plaintiff's] complaints could in any way be related to the cervical sprain which I treated on April 21, 1976, and my opinion is that all of the symptoms that he has described are symptoms of the progressive disease of syringomyelia and it is my opinion that whatever happened with regard to his neurological disorder related to the accident would have been immediate and that these complaints are related to his syringomyelia and have nothing whatsoever to do with the cervical sprain.

The urinary tract problems are, according to Dr. Price, a result of the syringomyelia.

At the close of the evidence, plaintiff was allowed to amend his complaint to allege that as a further result of said collision, he had "suffered permanent aggravation of his pre-existing condition and permanent injury." The jury found that plaintiff was injured and damaged by the negligence of defendant and that plaintiff did not contribute to his injuries by his own negligence. The jury awarded plaintiff $70,123.00 in damages. Defendant filed motions for judgment notwithstanding the verdict and a new trial which were denied. Defendant appeals.

*Charles Darsie; Archbell and Cotter, by James B. Archbell, for plaintiff appellee.*

*Haywood, Denny and Miller, by James H. Johnson III, for defendant appellant.*

VAUGHN, Judge.

[1] Defendant has brought forward eight arguments on appeal. All eight address one issue, the evidence and proof of damages, particularly the evidence and proof of damages relating to the preexisting syringomyelia. Our State recognizes the "special sensitivity" or "thin skull" rule. According to this rule, a negligent defendant is subject to liability for harm to the plaintiff although a physical condition of plaintiff which is neither known nor should be known to defendant makes the injury greater than that which defendant as a reasonable man should have foreseen as a probable result of his conduct. Restatement of Torts 2d § 461 (1965). As stated by our Supreme Court.

> [t]he general rule is that if the defendant's act would not have resulted in any injury to an ordinary person, he is not liable for harmful consequences to one of peculiar susceptibility, except insofar as he was on notice of the existence of such susceptibility, but if his misconduct amounts to a breach of duty to a person of ordinary susceptibility, he is liable for all damages suffered by plaintiff notwithstanding the fact these damages are unusually extensive because of peculiar susceptibility.

*Lockwood v. McCaskill,* 262 N.C. 663, 670, 138 S.E. 2d 541, 546 (1964). This case is but an application of this rule to a case where a preexisting condition has been aggravated. Plaintiff has presented competent medical evidence that his preexisting syringomyelia was aggravated by the collision which resulted from the negligence of defendant. Defendant is liable for the damages due to enhancement or aggravation of the condition.

An injured person is entitled to recover all damages proximately caused by the defendant's negligence. Even

so, when his injuries are aggravated or activated by a pre-existing physical or mental condition, defendant is liable only to the extent that his wrongful act proximately and naturally aggravated or activated plaintiff's condition. "The defendant is not liable for damages ... attributable solely to the original condition."

*Potts v. Howser*, 274 N.C. 49, 54, 161 S.E. 2d 737, 742 (1968). We now deal with the separate arguments of defendant addressed to this general principle of liability for the resulting damages.

[2] Defendant questions evidence of certain medical bills and expenses which plaintiff incurred. Over his objection, the trial court admitted testimony about a $1,511.06 bill for hospitalization in August 1976 and clinic treatment costs related to this hospitalization of $740.00 to his doctors and $57.00 to urologists. Defendant contends no competent medical testimony or evidence was presented by plaintiff to show that those medical bills were for treatment of injuries suffered as a result of defendant's negligence. Such evidence relating the damages to the injury caused by the defendant is required. *Ward v. Wentz*, 20 N.C. App. 229, 201 S.E. 2d 194 (1973); *Graves v. Harrington*, 6 N.C. App. 717, 171 S.E. 2d 218 (1969). Defendant points to the testimony of Dr. Weng where in discussing the August 1976 hospitalization he said, "the reason for the hospitalization in August of 1976 ... had nothing to do with the cervical sprain he received in the accident and this was to establish whether he did or did not have syringomyelia and that was the sole purpose of that hospitalization." This does not indicate as defendant contends that these medical costs are not damages for which defendant was liable. Plaintiff's case was based on damages which arose from the accident in two forms — a cervical sprain and aggravation of his syringomyelia. Thus, hospitalization costs in August 1976 following the accident to determine whether plaintiff indeed had syringomyelia were competent evidence of plaintiff's damages resulting from the accident.

[3] Defendant contends the trial court committed error in permitting plaintiff's evidence of why plaintiff and his wife stopped teaching, of bladder problems, of salary since the 1976 accident, of days missed from his teaching job and of pain and suffering

and mental anguish since the 1976 accident. He contends there is no causal connection between this testimony and the injuries suffered in the 1976 collision and that these items are in effect items of special damages not specifically pled by plaintiff as required by our Rules of Civil Procedure. G.S. 1A-1, Rule 9(g). The objected to evidence is directly related to the worsening syringomyelia for which defendant is liable to the extent his negligent conduct aggravated the preexisting condition. *Potts v. Howser, supra; Howell v. Nichols,* 22 N.C. App. 741, 207 S.E. 2d 768, *cert. den.,* 286 N.C. 211, 209 S.E. 2d 316 (1974). The expert testimony on causation of Dr. Weng and Dr. Price, is in conflict. The testimony presented a jury question and, if the jury chose to take Dr. Weng's opinion on the relationship of the worsened state of plaintiff's preexisting degenerative disease to the 1976 accident over that of Dr. Price, this evidence is causally related to the 1976 accident. According to Dr. Weng,

> If a patient has syringomyelia in the area where the cord is swollen up in its sheath, it will increase pressure and it will cause further extension of the canal. It will be like increasing a jet of water on the river bank and it will wash away more of the soil of the river bank and so the whiplash injury can or could aggravate the problem. It may hasten the development of fresh-worsening of neurological signs.

He went on to say that the accident could have aggravated the syringomyelia. His testimony to this effect is not too speculative as defendant contends. The doctor also testified that the collision could or might have caused a permanent cervical sprain. The evidence objected to is lay testimony supported by competent expert testimony tending to prove damages resulting from the accident. We find no merit to defendant's contention that these damages were not adequately pled by plaintiff. Plaintiff alleged that he "suffered extensive injuries, great pain of the body and mind, was prevented from transacting his business and incurred expenses for medical attention, hospitalization and damages to his person in an amount not yet determined." A subsequent amendment alleged damages to be $75,000.00. This is sufficient specific pleading under our Rules of Civil Procedure of these damages for which proof was offered. *See also Sparks v. Holland,* 209 N.C. 705, 184 S.E. 552 (1936).

**[4]** Defendant contends the hypothetical question to Dr. Weng contained facts not supported by competent evidence and that the opinion of Dr. Weng was based on speculation about medical possiblility as opposed to reasonable certainty or probability. The hypothetical question was acceptable in that it included only facts in evidence or which the jury might logically infer from the evidence. *Thompson v. Lockhert,* 34 N.C. App. 1, 237 S.E. 2d 259, *cert. den.,* 293 N.C. 593, 239 S.E. 2d 264 (1977). The response of Dr. Weng was not so speculative as to be inadmissible as competent evidence of causation. The case at hand is factually distinguishable from *Garland v. Shull,* 41 N.C. App. 143, 254 S.E. 2d 221 (1979) which is relied upon by defendant. The testimony of the medical expert in *Garland* in response to a hypothetical question was, "The headaches *may* persist for years at least. An indefinite period of time." *Id.* at 147, 254 S.E. 2d at 223 (emphasis added). The Court held the admission of this doctor's opinion with regard to possible pain and suffering which plaintiff might suffer in the future to be error. There was no amplification or explanation of the expert opinion in *Garland.* Dr. Weng, in the case at hand, stated that he was speaking of what was medically possible and what *will* happen. On cross-examination, he stated that "it would be less likely" that the accident would not have aggravated the syringomyelia. The evidence in the case at hand goes far beyond that offered in *Garland.* As stated by our Supreme Court in *Lockwood,*

> [t]he opinion is based on the reasonable probabilities known to the expert from scientific learning and experience. A result in a particular case may stem from a number of causes. The expert may express the opinion that a particular cause "could" or "might" have produced the result — indicating that the result is capable of proceeding from the particular cause as a scientific fact, *i.e.,* reasonable probability in the particular scientific field. If it is not reasonably probable, as a scientific fact, that a particular effect is capable of production by a given cause, and the witness so indicates, the evidence is not sufficient to establish *prima facie* the causal relation, and if the testimony is offered by the party having the burden of showing the causal relation, the testimony, upon objection, should not be admitted and, if admitted, should be stricken. The trial judge is not, of

course, required to make subtle and refined distinctions and he has discretion in passing on the admissibility of expert testimony, and if in the exercise of his discretion it reasonably appears to him that the expert witness, in giving testimony supporting a particular causal relation, is addressing himself to reasonable probabilities according to scientific knowledge and experience, and the testimony *per se* does not show that the causal relation is merely speculative and mere possibility, the admission of the testimony will not be held erroneous.

*Id.* at 262 N.C. at 668-69, 138 S.E. 2d at 545-46. The testimony of Dr. Weng satisfies the prerequisites for expert opinion set forth in *Lockwood.*

Defendant's remaining arguments are without merit. Amendment of the complaint at the close of the evidence to conform to the proof was properly allowed by the trial court. G.S. 1A-1, Rule 15(b). The jury instructions were proper in all respects, particularly the instructions on damages for aggravation of a preexisting injury wherein the instruction complied with the law in *Lockwood* and *Potts v. Howser.* The trial court properly denied defendant's motion for a new trial.

No error.

Judges PARKER and HEDRICK concur.