JOSIE PHILLIPS TICE v. WILLIAM HALL

No. 410A83

(Filed 3 April 1984)

**Negligence § 26.1; Physicians, Surgeons, and Allied Professions § 18— medical malpractice action—plaintiff entitled to rely on doctrine of res ipsa loquitur**

> In a medical malpractice action in which defendant was accused of leaving a sponge in plaintiff's body after surgery for a hiatal hernia, the trial court erred in granting defendant's motion for a directed verdict since plaintiff was entitled to rely upon the doctrine of *res ipsa loquitur* to take her case to the jury on the question of negligence of defendant. Contrary to defendant's contention the doctrine of *res ipsa loquitur* and G.S. 90-21.12 are not in conflict. The statute establishes the standard of care in medical malpractice cases, and the application of *res ipsa loquitur* allows the issue of whether defendant has complied with the statutory standard to be submitted to the jury for its determination.

APPEAL by defendant pursuant to N.C.G.S. 7A-30(2) from the decision of the Court of Appeals (*Judge Wells*, with *Judge Eagles* concurring and *Judge Becton* dissenting) reported at 63 N.C. App. 27, 303 S.E. 2d 832 (1983). The Court of Appeals reversed the judgment of *Bowen, J.*, entered at the 8 February 1982 Civil Session of Superior Court, CUMBERLAND County, granting defendant's motion for a directed verdict, and remanded the case for a new trial. Heard in the Supreme Court 7 November 1983.

Plaintiff's evidence in this medical malpractice action tended to show the following:

Defendant performed an operation upon Josie Phillips Tice on 8 September 1976 in Cape Fear Valley Hospital. The surgery was for a hiatal hernia. Defendant also had been monitoring Mrs. Tice for the past ten years for the possible recurrence of a cancer for which she had undergone radical mastectomies in 1952 and in 1960. At the time of her hernia surgery, Mrs. Tice was sixty-five years old. In routine post-operative visits to defendant at his Fayetteville office, Mrs. Tice complained to Dr. Hall that "the pain and discomfort from the hernia was relieved but still there was something in there that I felt was not just right." She was experiencing nausea, the pressure of "a blockage" that caused difficulty in swallowing, and sufficient discomfort at night to disturb her sleep. Dr. Hall continued to reassure plaintiff that her symptoms were not unusual given her previous operations. He did not X-ray Mrs. Tice.

Over the course of the next three years, the plaintiff returned to her general practitioner, Dr. Izurieta, to whom she had been originally referred by defendant. She was experiencing constant pain and discomfort from the above symptoms.

In May 1979, defendant moved to Oklahoma. In September 1979, Dr. Izurieta had Mrs. Tice X-rayed at the Cape Fear Hospital. When she called his office for a report, she was told he wanted to see her in a couple of months.

It was not until November 1979 that plaintiff was told that the X rays had revealed the presence of a surgical sponge in her abdominal area. This information was not conveyed to plaintiff by Dr. Izurieta, the physician ordering the X rays, but by the defendant who telephoned Mrs. Tice from Oklahoma the day after the November 1979 visit to Dr. Izurieta. In testifying about this telephone call, Mrs. Tice related the following:

Q. Just tell us what he said.

A. Well, when I answered the phone he said, "Hello, Mrs. Tice." Said, "I am Dr. Hall. Do you remember me?" I said, "Indeed I do. And how have you been?" And he chatted a minute or two and then he said, "What I called for, Dr.

Izurieta just called me and said the minute he called me and started talking and mentioned your name I knew exactly what happened."

Q. And he said what, ma'am?

A. He said, "I knew what happened when Dr. Izurieta called your name." He said, "Back when I did the surgery," he said, "there was a sponge" or sponges, I'm not sure which word he used, but he said there was some left inside. He said, "I don't know how it could have happened. They were counted before and after surgery, but I know it is in there." I must have gone into shock or dazed or something.

MR. BROADFOOT: Objection.

COURT: Overruled.

A. Anyway, I do remember saying—(witness crying), "Well, you put it there. What are you going to do about it? Will you take it out?" And he laughed and he said, "No. I cannot come back to Fayetteville but if you will come here I will remove it." Then he went on to tell me about his evangelistic work and talked a long time.

On 20 November 1979, Dr. Harold Newman surgically removed the foreign body that was in plaintiff's abdominal cavity. He testified as follows about the surgery:

"Well, in the upper abdomen on the left-hand side there was a mass, which is circumscribed mass—lesion that had a fiberous [sic] capsule around it and it was adhered rather firmly to the other underside of the rib cage and on top of the structures in that area of the body. And it was about ten centimeters in diameter, which is about four and a half inches or so. A large orange or a small grapefruit size or something about that big. A small grapefruit or a large orange, yes. And the capsule contained a foreign body which was a fragmented, somewhat degenerated piece of cloth, you might say, which is what a sponge is." . . .

. . . The sponge was in the area that I would have expected one to be put there in the course of—during a hiatal hernia repair, yes.

. . . The sponge was in front of the spleen and was to the left of the—and somewhat in front of the stomach. It was superior or above the transverse colon and it was below the diaphragm. I removed the spleen along with the sponge, the entire spleen. A small area of the diaphragm was very firmly adhered to the sponge and a small portion of it was removed. The left-hand part of the omentum was stuck on top of the sponge and a portion of that was removed with it. The fibrous capsule was very firmly adhered to the structures and the spleen is a real fragile organ. I don't think it would have been possible to get this capsule removed without removing the spleen.

Evidence presented by the defendant included a comprehensive detailing by Dr. Hall of the surgical procedures involved in plaintiff's hernia operation. In particular, defendant described the intricate process of accounting for surgical sponges used in the course of her operation. There was further testimony from Dr. Franklin Clark regarding the community standard of care in such operations prevailing at the time of Mrs. Tice's surgery.

*Clark, Shaw, Clark & Bartelt, by Jerome B. Clark, Jr., and Teague, Campbell, Conely & Dennis, by John W. Campbell, for plaintiff appellee.*

*Anderson, Broadfoot, Anderson, Johnson & Anderson, by Hal W. Broadfoot, for defendant appellant.*

MARTIN, Justice.

The determinative issue on this appeal is whether Josie Phillips Tice is entitled to rely upon the doctrine of res ipsa loquitur to take her case to the jury on the question of the negligence of defendant Hall. We hold that the plaintiff is so entitled. The defendant's motion for a directed verdict was erroneously granted.

"Uniformly, in this and other courts, *res ipsa loquitur* has been applied to instances where foreign bodies, such as sponges, towels, needles, glass, etc., are introduced into the patient's body during surgical operations and left there." *Mitchell v. Saunders,* 219 N.C. 178, 182, 13 S.E. 2d 242, 245 (1941); *Pendergraft v. Royster,* 203 N.C. 384, 166 S.E. 285 (1932) (and cases cited

therein); *Hyder v. Weilbaecher*, 54 N.C. App. 287, 283 S.E. 2d 426 (1981), *disc. rev. denied*, 304 N.C. 727 (1982).

Despite testimony of defendant and his expert concerning the scrupulous sponge counting and recounting procedures employed by the surgical team in this and other cases and the reliance by surgeons on the sponge count provided by the nurses in assistance, the well-settled law in this jurisdiction is and has been that "a surgeon is under a duty to remove all harmful and unnecessary foreign objects at the completion of the operation. Thus the presence of a foreign object raises an inference of lack of due care." *Hyder v. Weilbaecher, supra*, 54 N.C. App. at 289, 283 S.E. 2d at 428. When a surgeon relies upon nurses or other attendants for accuracy in the removal of sponges from the body of his patient, he does so at his peril. By defendant's own admission, the surgical sponge removed from the body of Mrs. Tice in November 1979 was left inside the surgical cavity during the September 1976 operation over which he presided as surgeon.

If the facts of the case justify, as here, the application of the doctrine of res ipsa loquitur, the nature of the occurrence and the inference to be drawn supply the requisite degree of proof to carry the case to the jury without direct proof of negligence. *Young v. Anchor Co.*, 239 N.C. 288, 79 S.E. 2d 785 (1954); *Mitchell v. Saunders, supra*, 219 N.C. 178, 13 S.E. 2d 242. Equally well settled is the effect of the presumption thus established of defendant's negligence.

> The decisions are contrary to the proposition that any explanation which the defendant may see fit to furnish of matters which are supposed to be peculiarly within his knowledge is sufficient to rebut the *prima facie* case which *res ipsa loquitur* has made, or to repel the presumption, or, rather, inferences, which the jury may draw from it. It is still a matter for the jury.

*Mitchell v. Saunders, supra*, 219 N.C. at 183, 13 S.E. 2d at 246.

The defendant argues that the law of res ipsa loquitur as cited above has been superseded by the enactment of N.C.G.S. 90-21.12 which became effective 1 July 1976. The statute provides:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

*See Hunt v. Bradshaw*, 242 N.C. 517, 88 S.E. 2d 762 (1955). Defendant interprets the above to be "the definitive law of medical malpractice in North Carolina" and therefore controlling in this case. Defendant further argues the incompatibility of the statute with the res ipsa doctrine in cases such as this:

> Assume that the applicable standard requires a search prior to closing the surgical incision and sponge counts as well. Assume further that all of the evidence shows that the operating surgeon made a meticulous search and that all sponge counts were reported to him as correct. At that point he has complied fully with the applicable standard of care. However, under the ruling of the Court of Appeals he could still be held responsible under *res ipsa loquitur* if a sponge were left behind, contrary to the statute.

The defendant misapprehends the effect of the application of the doctrine of res ipsa loquitur. The doctrine of *res ipsa loquitur* and the statute are not in conflict. The statute establishes the standard of care in medical malpractice cases. The application of res ipsa loquitur allows the issue of whether defendant has complied with the statutory standard to be submitted to the jury for its determination. Although the application of the doctrine requires the submission of the issue to the jury, the burden remains upon the plaintiff to satisfy the jury that the defendant has failed to comply with the statutory standard. Defendant's evidence that he complied with the statutory standard does not remove the case from the jury's determination. As the trier of the facts, the jury remains free to accept or reject the testimony of defendant's witnesses. *Mitchell v. Saunders, supra,* 219 N.C. 178, 13 S.E. 2d

242. *See generally* Comment, *Medical Malpractice in North Carolina,* 54 N.C.L. Rev. 1214 (1976).

The trial court failed to properly apply the above rules in deciding defendant's motion for a directed verdict. On such motion, plaintiff's evidence must be taken as true and considered in the light most favorable to plaintiff, giving her the benefit of all reasonable inferences to be drawn therefrom. *Dickinson v. Pake,* 284 N.C. 576, 201 S.E. 2d 897 (1974). The evidence of the defendant, whether contradicted or uncontradicted, cannot be considered by the court, except insofar as it may tend to support plaintiff's case. *Mitchell v. Saunders, supra.* The enactment of N.C.G.S. 90-21.12 did not alter the above rules. When they are applied to the facts of this appeal, plaintiff has established a case for the twelve. The Court of Appeals properly reversed the directed verdict for defendant.

This holding is consistent with the legislative intent giving rise to N.C.G.S. 90-21.12. This statute and N.C.G.S. 90-21.11 were derived from recommendations of the Professional Liability Insurance Study Commission created by the 1975 General Assembly to study malpractice insurance rates and to submit a written report with recommended legislation.[1] 1975 N.C. Sess. Laws ch. 623. *See generally* Comment, *Statutory Standard of Care for North Carolina Health Care Providers,* 1 Campbell L. Rev. 111 (1979). This commission specifically declined to recommend legislation on the doctrine of res ipsa loquitur in this state. *See* Report of the North Carolina Professional Liability Insurance Study Commission (1976).

The Court of Appeals decision in this case is hereby

Affirmed.

---

[1]. The commission was composed of two insurance company representatives, two health professionals, and eight members of the General Assembly drawn equally from the House and Senate membership.