REGINA GAIL D. MITCHELL AND DONALD MITCHELL v. PETER E.
PARKER, PETER E. PARKER, M.D., P.A., DANIEL C. HALL AND FOR-
SYTH COUNTY HOSPITAL AUTHORITY, INC.

No. 8321SC655

(Filed 15 May 1984)

**Physicians, Surgeons, and Allied Professions § 20.1— malpractice action—directed
verdict for defendants improper**

In a medical malpractice action, the trial court erred in directing verdict
for defendants where plaintiffs' evidence, viewed in the light most favorable to
plaintiffs, was sufficient to require submission of the case to the jury. The
evidence tended to show that the femme plaintiff developed a post-operative
infection; defendants used Garamycin to treat the infection; Garamycin is a
"nephrotoxic medication" that can cause kidney damage; the femme plaintiff
became nephrotoxic on 19 October 1977; defendants failed to discontinue the
drug at the first sign of nephrotoxicity; defendant discontinued the monitoring
for nephrotoxicity; failure to discontinue the Garamycin when BUN was going
out of normal ranges was in contravention of good medical practice; and the
femme plaintiff now suffers from severe, permanent, and progressive kidney
damage.

APPEAL by plaintiffs from *DeRamus, Judge.* Judgment en-
tered 8 November 1982 in Superior Court, FORSYTH County.
Heard in the Court of Appeals 10 April 1984.

This is a civil action instituted by plaintiffs for personal in-
juries and loss of consortium caused by the alleged negligence of
defendants in treating plaintiff, Mrs. Regina Mitchell, for a post-
operative infection. Answers denying negligence, alleging con-
tributory negligence, and pleading the statute of limitations were
filed on behalf of all defendants. At the conclusion of plaintiffs'
evidence, defendants moved for and were granted directed ver-
dicts. From a judgment directing verdicts for defendants, plain-
tiffs appealed.

*Narron, Holdford, Babb, Harrison & Rhodes, P.A., by William
H. Holdford, and Yarborough & Yarborough, by Charles H. Yar-
borough, Jr., for plaintiffs, appellants.*

*J. Robert Elster and Michael L. Robinson for defendants, ap-
pellees, Peter E. Parker and Peter E. Parker, M.D., P.A.*

*Bell, Davis & Pitt, P.A., by William Kearns Davis, for de-
fendant, appellee, Daniel C. Hall.*

HEDRICK, Judge.

The sole question presented on appeal is whether the court erred in directing verdicts for defendants.

When a defendant moves for a directed verdict in a medical malpractice case, the question raised is whether plaintiff has offered evidence of each of the following elements of his claim for relief: (1) the standard of care; (2) breach of the standard of care; (3) proximate causation; and (4) damages. *Lowery v. Newton*, 52 N.C. App. 234, 237, 278 S.E. 2d 566, 570, *reconsideration of denial of disc. rev. denied*, 304 N.C. 195, 291 S.E. 2d 148 (1981). On such motion, plaintiff's evidence is to be viewed in the light most favorable to plaintiff. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E. 2d 678, 680 (1977). A directed verdict for defendant is improper "unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." *Id. Tice v. Hall*, 63 N.C. App. 27, 28, 303 S.E. 2d 832, 833 (1983), *aff'd*, 310 N.C. 589, --- S.E. 2d --- (1984).

The evidence considered in the light most favorable to plaintiffs tends to show the following:

Mrs. Mitchell is a thirty-five-year-old woman with a history of obesity. Over the years, Mrs. Mitchell has tried various means of weight reduction, including drug therapy and surgery. On 29 September 1977, Dr. Parker, assisted by Dr. Hall, a medical resident, performed a gastric segmentation designed to limit Mrs. Mitchell's food intake by reducing the size of her stomach. On or about the second post-operative day Mrs. Mitchell developed a serious infection for which Dr. Parker prescribed Garamycin and other medication.

Defendants were aware that Garamycin is a "nephrotoxic medication" that can cause kidney damage. Kidney functioning is commonly monitored by two tests yielding measures of serum creatine and blood urea nitrogen (hereinafter BUN). BUN measurements between fifteen and twenty are considered to be within the normal range. Defendants administered Garamycin from 10 October to 24 October 1977. On 17 October 1977, Mrs. Mitchell's BUN level was thirteen and on 19 October her BUN level was twenty-two. Garamycin was discontinued on 24 October

but no BUN and creatinine tests were done at that time. Defendants did not check the BUN and creatinine levels again until 1 November 1977, at which time Mrs. Mitchell's BUN level was over 200 and her creatinine level was 24. As a result of the toxicity caused by administration of Garamycin, Mrs. Mitchell suffered permanent kidney damage. Because of this injury, plaintiffs' marital relationship suffered, and the couple did not have sexual relations for approximately two years after the surgery.

We think this evidence ample to permit the jury to find that Mrs. Mitchell suffered injury proximately caused by the administration of Garamycin and that Mr. Mitchell suffered loss of consortium. Whether the court properly directed verdicts for defendants thus depends on the sufficiency of plaintiffs' evidence to raise jury issues as to the applicable standard of care and as to breach of that standard.

N.C. Gen. Stat. Sec. 90-21.12 provides:

In any action for damages for personal injury or death arising out of the furnishings or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

Our examination of the record reveals sufficient evidence of "the standards of practice among members of the same health care profession" in regard to the use of Garamycin. Dr. Parker, one of the defendants in the case, testified as follows:

[a]nybody that's on Garamycin we watch carefully.

. . .

Garamycin is a very potent antibiotic that you use when absolutely necessary when you have a patient that is dangerously ill.

. . .

The clinical observations I expect to see where the Garamycin is causing problems with the patient's kidneys would be the urine output.

. . .

The chief ways of seeing whether the patient is having nephrotoxicity is by BUN and creatinine at that time.

. . .

And when you reach a point where it appears that the BUN and creatinine are starting to gradually climb, you have to stop the drug.

Additional evidence of the standard of care was presented by Dr. Furhman, an expert witness called by plaintiffs, who testified:

[W]hen any medication has a known and well reported toxic side effect, it is incumbent on the physician to be aware of and to monitor in whatever way is appropriate to determine that it might be present.

. . .

When a patient is being administered Gentamycin [Garamycin], usually one monitors a couple of things. One monitors urinary output to determine that it is adequate. Secondly, one would usually monitor the creatinine in conjunction with the blood urea nitrogen as an indication of early impairment that might not be observable by measuring just urinary output.

. . .

If one determines that there is an elevation of blood urea nitrogen and creatinine, depending upon the indication it's being used for, one should certainly check the fact that that elevation is a true one, but if it can be documented that there is an impairment, one of the things to consider is that the medication should be stopped because the abnormality can be a progressive one.

. . .

If the medications were stopped at the first time they were going out of normal range, that would be consistent with good medical care.

Examination of the record also reveals evidence that defendants breached the standard of care. Dr. Parker testified:

The range of normal with BUN is between fifteen and 20, in that area for normal people.

. . .

I knew that on the 19th it [BUN] was climbing. It [BUN] was 22 on the 19th. . . .

. . .

With the readings which were received on October 19th I did not think it essential to continue to monitor the BUN and creatinine because we—we had planned to stop the antibiotic soon if her condition continued the way it was.

We conclude that plaintiffs' evidence, viewed in the light most favorable to plaintiffs, was sufficient to require submission of the case to the jury. There was testimony that Mrs. Mitchell was nephrotoxic on 19 October 1977; that defendant failed to discontinue the drug at the first sign of nephrotoxicity; that defendant discontinued the monitoring for nephrotoxicity; that failure to discontinue the Garamycin when BUN was going out of normal ranges was in contravention of good medical practice; and that Mrs. Mitchell now suffers from severe, permanent, and progressive kidney damage. Given these facts, we hold that it was error for the judge to remove the case from the jury and direct a verdict for defendants.

While defendants contend that directed verdicts for defendants should be upheld on the independent ground of Mrs. Mitchell's contributory negligence, we find no evidence in the record of such negligence on the part of plaintiff and thus reject defendants' argument in this regard. We similarly reject defendant Hall's contention that directed verdict was proper as to him because he at all times acted under defendant Parker's supervision and control. The record shows that defendant Hall assisted with Mrs. Mitchell's gastric segmentation, that he ordered medication to be administered to Mrs. Mitchell, that he signed

many of Mrs. Mitchell's hospital progress notes, and that he made rounds with defendant Parker and discussed Mrs. Mitchell's condition and treatment. This evidence is clearly sufficient to raise an inference as to defendant Hall's negligence in treating Mrs. Mitchell, and we hold the court erred in directing a verdict as to defendant Hall.

Reversed and remanded.

Judges ARNOLD and WELLS concur.