EDNA SCALES v. BASIL M. TUCKER, D.P.M. AND CATHERINE BIRDSALL
HEALY, D.P.M.

No. 8417SC530

(Filed 2 April 1985)

**Physicians, Surgeons and Allied Professions § 16.1— podiatric malpractice—evidence insufficient**

> Directed verdict for defendant podiatrists was proper in a medical malpractice action where plaintiff's expert witness, the vascular surgeon who ultimately amputated plaintiff's leg, testified that plaintiff lost her leg because of her peripheral vascular disease and diabetes rather than any alleged act by defendants, and where the surgeon found no evidence of a cut on plaintiff's foot and there was no mention of a cut in the pathologist's report. Plaintiff failed to introduce any evidence of proximate cause.

APPEAL by plaintiff from *Washington, Judge.* Judgment entered 11 January 1984 in Superior Court, ROCKINGHAM County. Heard in the Court of Appeals 15 January 1985.

This is a medical malpractice action. Plaintiff is a ninety-four year old woman suffering from diabetes mellitus, hypertrophic arthritis, and arteriosclerosis. Plaintiff's complaint alleges, and plaintiff and her daughter testified at trial, that on 21 April 1980 defendant Healy, a doctor of podiatry who was employed by defendant Tucker in Eden, North Carolina, examined plaintiff's left foot, trimmed plaintiff's toenails, and cut off a callus on the bottom of plaintiff's left third toe. Dr. Healy then bandaged plaintiff's toe and gave her medication to prevent infection. Because of this cut, plaintiff's left foot became infected and gangrenous necessitating amputation of her left leg below the knee.

At trial Dr. Healy testified that she was not working with Dr. Tucker in Eden, North Carolina on 21 April 1980, having left Dr. Tucker's practice on 28 February 1980 and moved to Statesville, North Carolina. The last time Dr. Healy saw plaintiff was on 25 February 1980. At that time Dr. Healy noticed that plaintiff's left third toe was discoloring and advised plaintiff to see Dr. Fleishman, a vascular surgeon. Dr. Healy saw no sores or lesions on plaintiff's left foot, and she did not make an incision on plaintiff's left third toe. In Dr. Healy's opinion plaintiff lost her leg because of severe vascular disease.

Dr. Tucker testified that plaintiff was seen by Dr. Healy on 25 February 1980, and according to office notes, the left third toe was ischemic, which means a lack of blood supply, with no sign of infection. Plaintiff was advised to see Dr. Fleishman, but refused. Dr. Tucker saw plaintiff on 31 March 1980 and noted that the third left toe was discolored, he also advised plaintiff to see Dr. Fleishman, but she refused. Dr. Tucker further testified that the ischemia had been present for sometime in plaintiff's left third toe, was irreversible, and surgery was inevitable. Dr. Tucker saw plaintiff again on 10 April 1980 and on 21 April 1980. Each time he counseled plaintiff to see Dr. Fleishman. Dr. Tucker testified he did not cut plaintiff's left third toe and he saw no cut there. In Dr. Tucker's opinion, neither he nor Dr. Healy did anything to necessitate plaintiff's amputation.

Dr. Fleishman, tendered as an expert by plaintiff in the fields of general surgery and vascular surgery, testified that he saw plaintiff on 23 April 1980 and 12 May 1980. Plaintiff had very advanced ischemia disease on her left third toe. On 2 June 1980 Dr. Fleishman noted that plaintiff's left third toe had dry gangrene; on 18 June her entire left foot was gangrenous, and Dr. Fleishman then amputated plaintiff's left leg. The pathology report pursuant to the operation revealed that the arteries near the amputation site were extremely arteriosclerotic. Dr. Fleishman testified that he found no cut on plaintiff's left third toe on 23 April 1980, and no such cut was documented in the pathology report. In response to a hypothetical question based on plaintiff's allegation that the gangrene was caused by cutting a callus from plaintiff's toe, Dr. Fleishman said that it was highly unlikely that it was the cause because he found no such cut and the left third toe had dry gangrene, which means that it was not infected.

At the close of all the evidence defendants' motion for a directed verdict was granted.

*Joe L. Webster and W. Steven Allen for plaintiff appellant.*

*Tuggle, Duggins, Meschan and Elrod by Joseph E. Elrod III and Sally A. Lawing for defendant appellees.*

PARKER, Judge.

Plaintiff assigns error to the trial judge's entry of directed verdict in favor of defendants. The trial judge was correct in

granting defendants' motion for a directed verdict if plaintiff's evidence, considered true and with the benefit of every inference resolved in her favor, failed to establish all of the following elements: (i) the standard of care required of defendant physician; (ii) breach of the standard of care; (iii) proximate cause; and (iv) damages. *Lowery v. Newton*, 52 N.C. App. 234, 278 S.E. 2d 566, *reconsideration of denial of discretionary review denied*, 304 N.C. 195, 291 S.E. 2d 148 (1981). *Accord, Mitchell v. Parker*, 68 N.C. App. 458, 315 S.E. 2d 76, *review denied*, 311 N.C. 760, 321 S.E. 2d 140 (defendant Hall), 311 N.C. 760, 321 S.E. 2d 141 (defendant Parker) (1984).

We find the trial judge's entry of directed verdict for defendants was proper because plaintiff failed to present any evidence to support the allegation that defendants' treatment was the proximate cause of her gangrene which necessitated the amputation. Dr. Fleishman, plaintiff's expert witness, testified that plaintiff's amputation was necessary because of her severe peripheral vascular disease. Dr. Fleishman thoroughly examined plaintiff's left foot on 23 April 1980 and found no evidence of a cut. There was also no mention of a cut in the pathologist's report. Dr. Fleishman testified:

Q. What you are telling the jury is that this lady lost her leg because of her peripheral vascular disease and because of diabetes, not because of a cut alleged to have occurred on April 21, 1980?

A. [Dr. Fleishman]: That is my opinion, sir.

. . . .

Q. Doctor, in your opinion this lady's leg that was amputated by you, this amputation was not caused by any podiatric care that was either given or not given by either Dr. Tucker or Dr. Healy, is that correct?

Mr. Webster: Objection.

Court: Overruled.

A. [Dr. Fleishman]: No, I don't think that was caused by her podiatric care.

Notwithstanding, Dr. Fleishman's isolated deposition testimony in response to a hypothetical question that if the toe were cut, "it could be a contributing factor" his testimony considered in its entirety manifests a positive opinion that defendants' treatment was not a proximate cause of plaintiff's injury. *See Largent v. Acuff,* 69 N.C. App. 439, 317 S.E. 2d 111, *review denied,* 312 N.C. 83, 321 S.E. 2d 896 (1984). An expert witness is allowed to conform his answer to his true opinion, *id.,* and that opinion may be based, in whole or in part, on personal knowledge or observation. *See Ballenger v. Burris Industries, Inc.,* 66 N.C. App. 556, 311 S.E. 2d 881, *review denied,* 310 N.C. 743, 315 S.E. 2d 700 (1984).

Considered in the light most favorable to plaintiff, and giving plaintiff the benefit of every reasonable inference, plaintiff has failed to introduce any evidence of proximate cause; the directed verdict entered for defendant is, therefore,

Affirmed.

Chief Judge HEDRICK and Judge WHICHARD concur.