EVERETT LONZO FELTS AND WIFE, SHIRLEY G. FELTS v. LIBERTY EMERGENCY SERVICE, P.A., D/B/A MT. AIRY PRIMARY CARE, KIP LARSON, M.D. AND JOHN CANON, M.D.

No. 8917SC204

(Filed 20 February 1990)

**Physicians, Surgeons, and Allied Professions § 17 (NCI3d) — heart attack — malpractice — sufficiency of evidence**

Evidence in a medical malpractice case was sufficient to be submitted to the jury where it tended to show that defendants' failure to take plaintiff's medical history, to hospitalize, and to diagnose more thoroughly plaintiff's condition contributed to his myocardial infarction and its severity.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 264, 357.**

Chief Judge HEDRICK dissenting.

APPEAL by plaintiffs from *Mills (F. Fetzer), Judge.* Judgment signed 1 August 1988 in Superior Court, SURRY County. Heard in the Court of Appeals 23 August 1989.

This is an action for compensatory damages in a complaint filed 3 August 1987 by plaintiffs alleging medical malpractice and loss of consortium against defendants.

Prior to the close of plaintiffs' evidence at trial on 25 July 1988, plaintiffs took a voluntary dismissal without prejudice of their claim against defendant John Canon, M.D. Plaintiffs also acknowledged in open court that there was no evidence of independent corporate negligence by defendant Liberty Emergency Service, P.A. d/b/a Mt. Airy Primary Care (hereinafter Mt. Airy), and that any negligence claim against Mt. Airy would be limited to a claim of *respondeat superior* arising out of the allegations of negligence against defendant Larson.

At the close of plaintiffs' evidence, defendants moved for directed verdict, pursuant to N.C. Gen. Stat. sec. 1A-1, Rule 50. The trial court granted defendants' motion "on the grounds that the evidence was insufficient to support a verdict against the defendants, . . . failed to establish the appropriate standard of care, breach of any appropriate standard of care, or that any breach was a proximate cause of any injuries or damages . . . ." From this judgment, plaintiffs appeal.

*Sarah S. Stevens for plaintiff-appellants.*

*Bell, Davis & Pitt, P.A., by William Kearns Davis and Richard V. Bennett, for defendants-appellees.*

ORR, Judge.    .

The sole question presented on appeal is whether the trial court erred in directing verdict for defendants at the close of plaintiffs' evidence.

The purpose of a motion for directed verdict under N.C. Gen. Stat. sec. 1A-1, Rule 50(a) is to test the legal sufficiency of the evidence to take the case to the jury. *Wallace v. Evans*, 60 N.C. App. 145, 298 S.E.2d 193 (1982). In determining such a motion, plaintiffs "should be given the benefit of all reasonable inferences; and that the motion should be denied if there is any evidence more than a scintilla to support plaintiff's prima facie case in all its constituent elements." *Id.* at 146, 298 S.E.2d at 194 (citations omitted).

FELTS v. LIBERTY EMERGENCY SERVICE

[97 N.C. App. 381 (1990)]

Evidence presented at trial that raises only a mere possibility or conjecture is insufficient to withstand a motion for directed verdict; however, the evidence in favor of the nonmovant must be taken as true. *Bruegge v. Mastertemp, Inc.*, 83 N.C. App. 508, 350 S.E.2d 918 (1986) (citations omitted).

These principles apply equally in a medical malpractice action.

When a defendant moves for a directed verdict in a medical malpractice case, the question raised is whether plaintiff has offered evidence of each of the following elements of his claim for relief: (1) the standard of care; (2) breach of the standard of care; (3) proximate causation; and (4) damages. *Lowery v. Newton*, 52 N.C. App. 234, 237, 278 S.E.2d 566, 570, *reconsideration of denial of disc. rev. denied*, 304 N.C. 195, 291 S.E.2d 148 (1981). On such motion, plaintiff's evidence is to be viewed in the light most favorable to plaintiff. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 670, 231 S.E.2d 678, 680 (1977). A directed verdict for defendant is improper 'unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish.' *Id. Tice v. Hall*, 63 N.C. App. 27, 28, 303 S.E.2d 832, 833 (1983), *aff'd*, 310 N.C. 589, [313] S.E.2d [565] (1984).

*Mitchell v. Parker*, 68 N.C. App. 458, 459, 315 S.E.2d 76, 77, *disc. rev. denied*, 311 N.C. 760, 321 S.E.2d 140 (1984).

A defendant is not entitled to a directed verdict in a negligence action unless the plaintiff has not established the elements of negligence as a matter of law. *McMurray v. Surety Federal Savings & Loan Assoc.*, 82 N.C. App. 729, 348 S.E.2d 162 (1986), *cert. denied*, 318 N.C. 695, 351 S.E.2d 748 (1987) (citation omitted).

Plaintiffs' evidence at trial showed that plaintiff Everett Felts (hereinafter plaintiff) was treated by defendant Kip Larson, M.D., at Mt. Airy Primary Care on 8 November 1986, for a sore throat, pain in his upper right chest, dizziness and pallor. Plaintiff testified that he was holding his chest and had difficulty breathing. Upon examination, Dr. Larson noted that plaintiff was generally ill-looking, had a sore throat, supple neck, clear chest, regular heartbeat without murmurs, was somewhat overweight and was a smoker.

Dr. Larson concluded from these symptoms that plaintiff possibly had strep throat, pneumonia, pericarditis or myocarditis. He sub-

sequently ordered a strep throat test, chest x-ray, complete blood count and an electrocardiogram. The complete blood count reflected a slightly elevated white blood count which was consistent with a strep infection. All other tests were within normal limits.

Plaintiff received oxygen for his dizziness and a shot of penicillin for his strep pharyngitis. Dr. Larson told plaintiff of his diagnosis and requested that plaintiff return in two days or go to the emergency room at the local hospital should his condition worsen or new symptoms develop. Plaintiff was sent home.

One of Dr. Larson's employees called plaintiff the following day to determine his progress. Plaintiff's wife told the employee that plaintiff was "fine — no problems."

Plaintiff returned to work on 10 November 1986 and became ill. He then returned to Mt. Airy Primary Care and was treated by defendant John Canon, M.D. During this examination, plaintiff reported pain in his jaw and neck with chest pain and difficulty breathing. Plaintiff testified that his symptoms decreased during the examination, and Dr. Canon prescribed additional penicillin for plaintiff's strep throat infection.

The next evening plaintiff competed in a bowling tournament with his bowling team. While bowling, plaintiff received a call from his wife to return home to assist her in taking their son to the emergency room. Plaintiff testified that he began to feel sick as he drove home and felt worse on his way to the hospital. When he reached the hospital, he had a myocardial infarction and was treated by Charles R. Bokesch, M.D.

Two days later, plaintiff was transferred to Duke University Medical Center and underwent angioplasty. At trial, Dr. Bokesch testified that when he treated plaintiff on 11 November 1986, plaintiff was suffering from cardiorespiratory arrest and that plaintiff had no evidence of strep throat on that date. Dr. Bokesch further testified that he was familiar with medical practices in emergency room settings in Mt. Airy and similar communities, and that "a more explicit medical history probably would have been taken [by physicians] from [plaintiff or his family on 8 November 1986,]" and that "[plaintiff] may have been admitted to the hospital . . . for 24 or 48 hours . . ." for further evaluation.

Joseph Jackson, M.D., qualified as a medical expert and testified that in his opinion it was "maybe . . . outside the standard of

care . . ." in Mt. Airy or similar communities to send a patient like the plaintiff home in his condition on 8 November 1986. Dr. Jackson stated that he believed plaintiff "should have been observed for an additional period of time to determine the cause of his chest pain."

Regarding allegations that defendants breached the standard of care owed to plaintiff, Dr. Bokesch testified that in his opinion it was "possible that the heart attack could have been prevented if he [plaintiff] had been admitted to the Coronary Unit, or for that matter, to the hospital."

In the case before us, the trial court granted defendants' directed verdict on the grounds that plaintiffs' evidence failed to establish the appropriate standard of care, breach of standard of care, or that any breach was a proximate cause of any injuries or damages to plaintiffs. Because the trial court did not specify which one or all of the above grounds upon which it directed verdict, this Court will address all three.

Plaintiffs contend that in their testimony at trial Dr. Bokesch and Dr. Jackson established that the standard of care required in Mt. Airy and similar communities was to take a more detailed medical history and possibly to admit a patient with plaintiff's symptoms to the hospital for observation. According to Dr. Bokesch, the standard of care required a more thorough diagnosis and possible hospitalization to assist in that diagnosis. We find no evidence that Dr. Bokesch stated that failure to hospitalize plaintiff was the equivalent of failure to diagnose his condition. Dr. Bokesch's testimony established only that hospitalization would have assisted in a more accurate diagnosis.

Regarding the standard of care, Dr. Bokesch testified:

Q. Let's see. In the event that—would it have been the standard of care in Mount Airy and similar communities in November of 1986 among family practitioners, emergency rooms, or Dr. Larson, or Dr. Canon, or physicians similarly situated to have elicited further medical history in the event that one of their patients exhibits an EKG such as the one that Mr. Felts exhibited?

. . .

A. I think so. I would think so.

Q. And what type of information, if any in your opinion, would the standard of care required that physician to inquire about?

. . .

A. Again, the nature of the chest pain, how long he's had it, whether it radiates, whether it's associated with smothering or shortness of breath or tightness in his chest, whether it goes down both arms or to his back, whether it occurs when he's resting or when he's working or exercising, whether it's intermittent or constant, whether he feels any palpitations or rapid irregular heart beats associated with the pain when he has it, whether he has to stop working when he has it, whether or not he breaks out in a cold sweat when he has the discomfort, that sort of thing.

Q. Dr. Bokesch, is there any indication in the medical records from Primary Care that such a history was taken?

A. Not that's in the record.

(Exceptions and objections omitted.)

Dr. Bokesch also testified that:

In all probability, from the experience I've had in this community since I've been here, a more explicit history probably would have been taken by either the emergency room physicians or the family practitioners or the general practitioners in town. And the patient may have been admitted to the hospital by the emergency room physician for observation for 24 or 48 hours, or if seen by a family practitioner or general practitioner they may have been referred to an internist or somebody specializing in this problem for further evaluation, and possibly then considered for admission to the hospital for observation.

Dr. Jackson also testified to the standard of care and the breach of the standard of care regarding plaintiff being sent home by Dr. Larson in his [plaintiff's] physical condition on 8 November 1986. Regarding the standard of care, Dr. Jackson testified:

Assuming the situation as you have stated it I felt that the standard of care would dictate that this patient should not have been sent home and should have been observed for an additional period of time to determine the cause of his

chest pain, that his treatment maybe fell outside the standard of care.

Dr. Jackson testified concerning breach of the standard of care.

A. I believe that, assuming the findings are as you've stated, I believe the, most physicians would have some concern about sending a patient like this home without maybe determining the reason for his complaints. I think observation in a hospital or some type of care facility for 24 hours or so would have been a reasonable thing to rule out any other serious cardiac problems.

There is a couple of points that there is some question about, apparently. And that is whether or not the patient is short of breath and whether or not his pain he was having was pleuritic or not. And if the patient was indeed short of breath and chest pain was not pleuritic and he was in fact dizzy and pale appearing, all of the tests that were done did not provide an explanation of why the patient had these symptoms.

And I believe he appeared to be a little bit sicker than you would expect the normal patient to be with a strep throat. That's why the tests were done. And even after they were done there was still no good explanation as to why the patient was short of breath, why he was having non-pleuritic chest pain. And in that situation you always, you're trained to, if you're going to make a mistake make it toward being too cautious, rather than sending the patient home and assuming that there's nothing more serious going on. And usually you can do that within 24 hours without a lot of extra expense if the patient is observed in a hospital setting, not even in a coronary unit, but in a setting where you can monitor his heart rate and blood pressure, and see if he develops worsening chest pain or recurrence of his symptoms, and then repeat the EKG and certain other blood tests. You can usually determine within 24 hours if the patient at least has a life threatening cardiac problem.

We note that defendants argue that plaintiffs' hypothetical questions were defective surrounding the issue of the standard of care. While plaintiffs' hypothetical question to Dr. Jackson contained at least one error, it was not sufficiently prejudicial to

render the question invalid. Hypothetical questions are rarely perfect at the trial level. *Lockwood v. McCaskill*, 262 N.C. 663, 666, 138 S.E.2d 541, 544 (1964). We find that plaintiffs' hypothetical questions, while unusually long, met the essential requirements of including facts in evidence or those which a jury might logically infer therefrom, and did not include irrelevant matters. *Thompson v. Lockert*, 34 N.C. App. 1, 6, 237 S.E.2d 259, 262, *disc. rev. denied*, 293 N.C. 593, 239 S.E.2d 265 (1977).

We now turn to whether plaintiffs produced sufficient evidence to establish that the failure to hospitalize plaintiff was a proximate cause of plaintiff's injuries. Dr. Bokesch testified as follows:

Q. Dr. Bokesch, do you have an opinion satisfactory to yourself and to a reasonable medical certainty that the heart attack suffered by Mr. Felts on November 11, 1988, (sic) might have been prevented had the plaintiff, had the plaintiff's cardiac condition been diagnosed on November 8, 1986?

. . .

A. Yes.

Q. What is that opinion?

. . .

A. It's possible that the heart attack could have been prevented if he had been admitted to the Coronary Unit, or for that matter, to the hospital. There are certain drugs that can be given now to help prevent a heart attack. Simply rest and oxygen can help prevent a heart attack. But there are other drugs that can be administered in the Coronary Care Unit that can possibly prevent a heart attack.

Also, if a patient is admitted and observed in a Coronary Care Unit and they do start to deteriorate at this hospital, or hospital of similar size in a community this size, you can transport them by helicopter. . . . They can then undergo cardiac catheterization and certain other procedures that may be necessary to possibly alleviate a heart attack or at least limit its damage.

Both plaintiffs and defendants argue the merits of whether the terms "maybe," "possible," "may have been" and "could have been" used by Dr. Jackson and Dr. Bokesch are sufficient assertions to establish breach of a standard of care and proximate cause.

**FELTS v. LIBERTY EMERGENCY SERVICE**

[97 N.C. App. 381 (1990)]

We believe that the testimony above raises more than a "mere possibility or conjecture" and is sufficient to withstand a directed verdict. *Bruegge v. Mastertemp, Inc.*, 83 N.C. App. 508 at 510, 350 S.E.2d 918 at 919 (1986).

Dr. Bokesch's testimony that "It's possible that the [plaintiff's] heart attack could have been prevented if he had been admitted . . ." would be a "mere possibility" standing alone. However, Dr. Bokesch then gave a detailed explanation of how admission to a hospital on 8 November 1986 could have prevented plaintiff's heart attack.

Our case bears a resemblance to the facts in *Lockwood*, 262 N.C. 663 at 669, 138 S.E.2d 541 at 543 (1964), where expert opinion was found admissible because additional testimony from a non-expert supported the expert's opinion that the accident "may have had" an influence on the plaintiff's condition. Moreover, the *Lockwood* court stated that:

> The expert may express the opinion that a particular cause 'could' or 'might' have produced the result — indicating that the result is capable of proceeding from the particular cause as a scientific fact, i.e., reasonable probability in the particular scientific field. If it is not reasonably probable, as a scientific fact, that a particular effect is capable of production by a given cause, and the witness so indicates, the evidence is not sufficient to establish *prima facie* the causal relation and if the testimony is offered by the party having the burden of showing the causal relation, the testimony, upon objection, should not be admitted and, if admitted, should be stricken. The trial judge is not, of course, required to make subtle and refined distinctions and he has discretion in passing on the admissibility of expert testimony, and if in the exercise of his discretion it reasonably appears to him that the expert witness, in giving testimony supporting a particular causal relation is addressing himself to reasonable probabilities according to scientific knowledge and experience, and the testimony *per se* does not show that the causal relation is merely speculative and mere possibility, the admission of the testimony will not be held erroneous.

*Id.* at 669-70, 138 S.E.2d at 545-46. *See also Lee v. Regan*, 47 N.C. App. 544, 267 S.E.2d 909, *disc. rev. denied*, 301 N.C. 92, 273 S.E.2d 299 (1980).

We find that plaintiffs' evidence at trial establishes more than a minimal "showing that different treatment would have improved [his] chances of recovery." Plaintiffs' evidence before the trial court tended to show that defendants' failure to hospitalize and failure to more thoroughly diagnose plaintiff's condition contributed to his myocardial infarction and its severity. We hold that this is sufficient to overcome a directed verdict motion on the issue of proximate cause. It is a well-established principle that proximate cause is ordinarily a jury question. *Turner v. Duke University*, 325 N.C. 152, 162, 381 S.E.2d 706, 712 (1989) (citations omitted).

Defendants cite many cases discussing evidence held to be only a "mere possibility" or "possible liability" of the defendants and therefore are insufficient to establish proximate cause. Defendants correctly note that "[p]roof of proximate cause in a malpractice case requires more than a showing that a different treatment would have improved the patient's chances of recovery." *White v. Hunsinger*, 88 N.C. App. 382, 386, 363 S.E.2d 203, 206 (1988) (citations omitted).

However, for the reasons set forth above, we find that the evidence in the case before us sufficiently establishes all elements required including the standard of care, breach of the standard of care and proximate cause to allow the case to go to the jury. Therefore, we hold that the directed verdict in favor of defendants was granted improperly by the trial court.

Reversed.

Judge LEWIS concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

I respectfully dissent from the opinion reversing the judgment directing a verdict for defendants in this case. In my opinion, the evidence when considered in the light most favorable to plaintiffs is not sufficient to raise an inference from which the jury could find that either of the defendants was negligent in the diagnosis and treatment of the plaintiff, and that such negligence was a proximate cause of plaintiff's heart attack. I vote to affirm.