Henry Franklin WARDEN, Jr., Plaintiff

v.

UNITED STATES of America, Defendant.

No. 90–30–CRT–D.

United States District Court,
E.D. North Carolina,
Raleigh Division.

Sept. 1, 1993.

Henry Franklin Warden, Jr., pro se.

Linda Kaye Teal, U.S. Attorney's Office, Raleigh, NC, Richard B. Conely, Sr., Patterson, Dilthey, Clay & Bryson, Raleigh, NC, for U.S.

### ORDER

DUPREE, District Judge.

Plaintiff, Henry Franklin Warden, Jr., originally filed two actions pro se based on the same factual allegations, which cases were consolidated by this court. The first was a *Bivens* action the dismissal of which as against all defendants the Fourth Circuit upheld on appeal. The pending action was brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80 (1965 ꞏ and Supp.1993), based on the alleged negligent medical treatment given while plaintiff was an inmate at the Federal Correctional Institution at Butner, North Carolina ("FCI–Butner"). It is presently before the court on defendant's motion to dismiss or in the alternative for summary judgment and plaintiff's motion to amend his complaint. Plaintiff has also filed what he has designated as a "request for due process right to consultation prior to the issuance of a scheduling order." All responses and replies have been filed.

## I. FACTUAL BACKGROUND AND PRIOR PROCEDURAL HISTORY

In his complaint, plaintiff claims that he sustained an injury on April 10, 1987 while lifting weights at the gym at FCI–Butner, where he was incarcerated. After several complaints and visits to the prison infirmary, plaintiff was sent to Duke University Medical Center ("Duke") for diagnostic tests on August 11, 1987 and was seen by a Dr. Nunley. The diagnostic tests performed at Duke revealed a problem with one of plaintiff's spinal discs, the extent of which is disputed by the parties, but which required surgery around August 15, 1987. In January or February of 1988, plaintiff again saw Dr. Nunley at Duke and at the doctor's recommendation was readmitted to the hospital for testing.

Plaintiff alleges that at this second appointment with Dr. Nunley, another of his spinal discs was found to be ruptured. (Complaint at Para. 30.) Plaintiff further asserts that subsequently a Dr. Perry informed him that he did not consider the problem identified by Dr. Nunley an emergency, and that new fiscal policy of the government required plaintiff to be sent to the United States Medical Center for Federal Prisoners in Springfield, Missouri ("USMCFP–Springfield") for surgery rather than having it performed at Duke immediately. (Complaint at Paras. 31–33.)

Plaintiff was transported on May 5, 1988 from FCI–Butner to FCI at Talladega, Alabama and on May 18, 1988 to FCI at El Reno, Oklahoma and finally to USMCFP–Springfield on May 25, 1988. After this rather tortuous trip to USMCFP–Springfield, the head of neurology, Dr. Puzio, performed several diagnostic, pre-operative tests on plaintiff and discussed surgery as a treatment for plaintiff's current back problem. Surgery was performed on plaintiff at USMCFP–Springfield, and plaintiff alleges at a post-operative briefing, Dr. Puzio indicated he thought the surgery was successful but the only problem that might arise could have been caused by the length of time the nerve under the ruptured disc had been impinged. (Complaint at Para. 41.)

Plaintiff filed a claim with the southeast region of the Bureau of Prisons, which claim was denied sometime between July 27 and August 1, 1989. The current action was filed on January 16, 1990 asserting negligence or malpractice against various staff members of FCI–Butner for failing to diagnose plaintiff's second ruptured disc and act in a timely manner to prevent additional injury to plaintiff. Plaintiff named as defendants in his complaint various "P.A. John Doe's," Dr. Perry, Mr. Ron Hilwig, head of the medical department at FCI–Butner before his transfer to USMCFP–Springfield, Mr. Robert W. Skakun, head of the medical department at FCI–Butner after plaintiff's return from USMCFP–Springfield and Mr. Jack Roach, regional medical designator for the southeast region of the Bureau of Prisons. Plaintiff seeks compensatory damages for disfunction and disfigurement of his left arm and shoulder, for pain and suffering, for past and future mental anguish, for loss of future earning capacity, for future medical rehabilitative expenses, and for lost enjoyment of life.

II. *DISCUSSION*

A. *Defendant's Motion for Summary Judgment*

■ Defendant has moved to dismiss or alternatively for summary judgment. On a motion for summary judgment, a court must grant the motion if the parties' pleadings, depositions, interrogatory answers, admissions and any affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the initial burden of demonstrating the absence of any material issue of fact, but need not support its motion with affidavits or other materials negating the non-moving party's claim. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

■ Once the moving party meets its initial burden, the non-moving party may not rely upon mere allegations or denials contained in its pleadings, but must come forward with some form of evidentiary material

allowed by Rule 56 demonstrating the existence of a genuine issue of material fact requiring a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. In other words, to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In considering the motion, the court must view the facts and inferences to be drawn from the evidence in the light most favorable to the non-moving party to the extent those inferences are reasonable. *Matsushita Electrical Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986).

Plaintiff brought his claim for medical malpractice pursuant to the FTCA, 28 U.S.C. §§ 2671–80 (1965 and Supp.1993). This court has jurisdiction pursuant to 28 U.S.C. § 1346(b) (1976). Venue is proper pursuant to 28 U.S.C. § 1402 (1976).

■ brought under the FTCA are governed by the substantive law of the state in which the alleged tort occurred. *Shumaker v. United States*, 714 F.Supp. 154, 158 (M.D.N.C.1988). The negligence or malpractice alleged by plaintiff occurred in North Carolina, and the parties do not dispute that North Carolina substantive law controls this action. However, federal rules govern procedural questions, such as the summary judgment standard cited above used to determine if plaintiff has presented a genuine issue of material fact on his medical malpractice claim. *Id.*

Defendant asserts that North Carolina law requires expert testimony to make out a prima facie case for medical malpractice. Thus, defendant argues that plaintiff has failed to raise a genuine issue of material fact on his claims for medical malpractice. The court required the parties to disclose their expert witnesses by May 26, 1993, and plaintiff has identified no expert witnesses to date.

■ To recover on a medical malpractice claim under North Carolina law, plaintiff

must prove three essential elements: (1) the applicable standard of care; (2) defendant's breach of that standard; and (3) defendant's breach caused plaintiff's injury. *Shumaker* at 158. As a general rule, plaintiff must present expert testimony to make out a prima facie showing for each of these three elements. *Id.; Makas v. Hillhaven, Inc.*, 589 F.Supp. 736, 740 (M.D.N.C.1984) (granting defendant's motion for a directed verdict in medical negligence case because plaintiff did not offer any expert testimony on the standard of care); *White v. Hunsinger*, 88 N.C.App. 382, 387, 363 S.E.2d 203, 206 (1988) (plaintiff's failure to produce affidavit of medical expert on causation warranted trial court's grant of summary judgment for doctor on medical malpractice claim); *Beaver v. Hancock*, 72 N.C.App. 306, 312, 324 S.E.2d 294, 298–99 (1985) (upholding grant of summary judgment for defendant doctor because plaintiff failed to produce affidavit of medical experts on medical malpractice claim).

However, North Carolina courts have recognized an exception to the requirement of expert testimony in medical malpractice claims "[w]hen the jury, based on its common knowledge and experience, can understand, evaluate, and judge the legal reasonableness of a health care provider's actions." *Shumaker*, 714 F.Supp. at 159 (*quoting Makas*, 589 F.Supp. at 740). The limited number of North Carolina courts to apply this exception have discussed it as applying the doctrine of *res ipsa loquitur*. *Tice v. Hall*, 310 N.C. 589, 594–95, 313 S.E.2d 565, 567–68 (1984) (applying res ipsa to case in which doctor allegedly left sponge in plaintiff during operation and holding that trial court improperly granted directed verdict for defendant because plaintiff failed to produce expert testimony); *Schaffner v. Cumberland County Hospital System, Inc.*, 77 N.C.App. 689, 691–92, 336 S.E.2d 116, 118 (1985) (applying doctrine of res ipsa to case in which plaintiff's hand was burned during unrelated surgery to remove her adenoids and reversing trial court's grant of summary judgment for defendants based on plaintiff's lack of expert testimony on negligence and causation), *review denied*, 316 N.C. 195, 341 S.E.2d 578 (1986); *Parks v. Perry*, 68 N.C.App. 202, 207, 314 S.E.2d 287, 290 (applying res ipsa to case in which plaintiff allegedly suffered nerve damage in her right arm during a vaginal hysterectomy operation and reversing summary judgment for defendant nurse responsible for positioning patient during surgery), *review denied*, 311 N.C. 761, 321 S.E.2d 142 (1984).

■ In the present case the question is whether defendant's employees' decision to treat plaintiff's condition as a non-emergency and require treatment at USMCFP–Springfield unnecessarily caused plaintiff to suffer additional disfigurement, disfunction, pain and suffering or whether plaintiff's condition resulted from a degenerative disc disease. The answer to this question is obviously not a matter of common knowledge nor does it warrant the presumption created by applying the doctrine of *res ipsa loquitur*. Thus, under the general rule, plaintiff was required to produce expert testimony to establish a prima facie case on his medical malpractice claim.

Plaintiff not only failed to produce any affidavits in response to defendant's motion [1] but has identified no experts long after the deadline established by the court for doing so. Thus, plaintiff has failed to raise a genuine issue of material fact on all elements of his medical malpractice claim, and therefore that claim must be dismissed.

## B. *Plaintiff's Motion to Amend His Complaint*

Plaintiff moved to amend his complaint on July 1, 1993. This proposed amendment attempts to incorporate the results of an examination that he received on or about June 16, 1991 which he claims uncovered a third ruptured spinal disc. Plaintiff claims that the alleged negligence of defendants set forth in his original complaint also caused this additional injury. Thus, plaintiff seeks not to amend to add an additional cause of action but merely alleges an additional injury discovered after the filing of his complaint.

■ Plaintiff need not amend his complaint to set forth additional injuries arising

---

1. The court sent plaintiff a letter on July 21, 1993 explaining his obligations under F.R.Civ.P. 56 governing summary motions pursuant to the Fourth Circuit's decision in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975).

from the same alleged negligence, although he may be under some obligation to amend his answers to defendant's discovery requests to notify defendant of such additional injuries. The court having previously determined that plaintiff failed to raise a genuine issue of material fact on his original claim for medical malpractice, for the same reasons must deny plaintiff's motion to amend.

### C. Plaintiff's Request For Due Process Right

■ Plaintiff also filed what he has entitled a "request for due process right to consultation prior to the issuance of a scheduling order." In this request, plaintiff claims that the court violated his due process rights by not affording him ample opportunity under F.R.Civ.P. 16(b) to express his concerns regarding a scheduling order issued after this court lifted the stay on this action. The court has considered plaintiff's argument but as defendant points out in its response to plaintiff's request, he was furnished with a copy of defendant's proposed scheduling order and filed no objections. Furthermore, the court has previously granted plaintiff one extension of time regarding discovery and disclosure of expert witnesses and he was free to articulate any additional concerns at that time. Thus, the court denies plaintiff's request as frivolous.

### III. CONCLUSION

Plaintiff failed to produce affidavits of any expert testimony on his medical malpractice claim and, therefore, failed to raise a genuine issue of material fact on that claim. Thus, the court grants defendant's motion for summary judgment. Since plaintiff's motion to amend his complaint seeks merely to set forth additional injuries allegedly caused by the defendant's original negligence and since he has made no showing that he could support his proposed additional allegations with expert testimony plaintiff's motion to amend is denied. Plaintiff's "request for due process right" is also denied.

SO ORDERED.