KELLY ROBERT CASEY, by and through his Guardian ad Litem, BRENDA KIRTON and MARY LOIS CASEY, Plaintiffs v. FREDRICKSON MOTOR EXPRESS CORPORATION, Defendant

No. 8828SC1274

(Filed 16 January 1990)

1. **Damages § 17.1 (NCI3d)— thin-skulled plaintiff rule—failure to instruct—error**

    In an action to recover for injuries sustained in an automobile accident, the trial court erred in refusing to instruct the jury on the thin-skulled plaintiff rule where there was evidence which would support a jury finding either that defendant's employee driver was not negligent or that his negligence did not cause plaintiff's brain damage, but the evidence would also support a finding of liability despite the fact that plaintiff's injuries also resulted from a pre-existing congenital defect unknown to anyone; furthermore, the trial court's error in failing to instruct the jury on the rule was not rendered moot because of the jury's verdict on the issue of negligence.

    **Am Jur 2d, Damages §§ 310-312, 997.**

2. **Automobiles and Other Vehicles § 89.2 (NCI3d)— last clear chance—insufficiency of evidence to require submission of issue**

    In an action to recover for injuries sustained in an automobile accident, the trial court did not err in refusing to instruct the jury on the doctrine of last clear chance where there was no evidence of the speed of defendant's tractor-trailer and no evidence that defendant's employee did not slow down when he saw plaintiff run off the road; there was evidence that defendant's employee swerved into the lane of oncoming traffic in order to avoid plaintiff who had run off the highway to the right of defendant's employee's lane of travel; there was evidence that the employee locked his brakes and that the tractor-trailer skidded for 107 feet, but there was no evidence that he had sufficient time to respond otherwise to a vehicle traveling toward him out of control; and the opportunity to avoid the accident was equally available to plaintiff who, having run off the highway, then pulled back onto the highway in front of defendant's employee.

    **Am Jur 2d, Automobiles and Highway Traffic §§ 843, 1118.**

**3. Automobiles and Other Vehicles § 90.7 (NCI3d)— sudden emergency—instruction proper**

Evidence was sufficient to support the trial court's instruction on the doctrine of sudden emergency where, according to defendant's employee's statement to the investigating officer, the employee was faced with a situation in which an oncoming vehicle had run off the road in front of him and then had pulled back onto the highway into the employee's lane of travel.

**Am Jur 2d, Automobiles and Highway Traffic §§ 843, 1117.**

APPEAL by plaintiff from judgment of *Judge Marlene Hyatt* entered 6 April 1988 in BUNCOMBE County Superior Court. Heard in the Court of Appeals 17 May 1989.

*Tharrington, Smith & Hargrove, by John R. Edwards and Douglas E. Kingsbery, for plaintiff appellant.*

*Collie and Wood, by George C. Collie and James F. Wood, III; and Charles M. Welling for defendant appellee.*

COZORT, Judge.

Plaintiff appeals from a jury verdict finding that plaintiff was not injured by the negligence of defendant. He contends that he was prejudiced by the trial court's refusal to instruct the jury on the "thin-skulled plaintiff" doctrine. We agree and remand for a new trial.

On 3 November 1981, plaintiff, a twenty-four-year-old student at UNC-Asheville, was driving his automobile on U.S. 25A (also called Sweeten Creek Road) in Asheville. Plaintiff was traveling south out of Asheville on his way to his part-time job at United Parcel Service, where his shift was to begin at 3:30 a.m. At approximately 123 Sweeten Creek Road, a short distance beyond a curve in the road, plaintiff's vehicle collided with a tractor-trailer owned by defendant and operated by defendant's employee, David York.

Plaintiff, who was unconscious following the accident, was transported to Memorial Mission Hospital, where he was seen by a neurosurgeon, Dr. Larry Schulhof. Plaintiff was in a coma and his neurological functioning was rapidly deteriorating. A CAT scan revealed a blood clot or a hemorrhage in the brain, and surgery

CASEY v. FREDRICKSON MOTOR EXPRESS CORP.

[97 N.C. App. 49 (1990)]

was performed, during which the hemorrhage was removed. Dr. Schulhof also discovered and removed a blood vessel abnormality, an arteriovenous malformation, which was congenital. As a result of the hemorrhage, plaintiff suffered severe brain damage and significant mental, vocational, and visual impairment. He has no memòry of the accident.

Plaintiff's parents were appointed as guardians for plaintiff in 1981. Following the death of plaintiff's father and a move by plaintiff and his mother to Costa Mesa, California, a resident of Buncombe County was appointed guardian ad litem in 1984. Plaintiff, by and through his guardian ad litem and his mother, filed a negligence action in 1984 against defendant Fredrickson Motor Express Corporation and David York. Defendants filed Answer alleging contributory negligence. Plaintiff responded denying contributory negligence and pleading the doctrine of last clear chance. Plaintiff's complaint was subsequently amended to include allegations of negligent entrustment. In March 1988, York was voluntarily dismissed from the action without prejudice.

At trial, plaintiff presented the testimony of Robert Demetrius, a co-worker who was traveling two cars behind plaintiff the morning of the accident. Demetrius testified that, prior to entering the curve at 123 Sweeten Creek Road, plaintiff was traveling in his own lane of traffic and below the posted speed limit. Demetrius did not see the collision take place. He stated that when he rounded the curve he had to slam on brakes and run off the road to a graveled area on his left to avoid the accident. He saw the tractor-trailer across both lanes of traffic with the tractor through the southbound lane, saw plaintiff's vehicle, badly damaged, in the southbound lane but facing north, and most of the debris in the southbound lane. Demetrius identified on a photograph a set of skid marks where he ran off the northbound shoulder to his left. He testified that there was a ten-foot graveled shoulder which continued all along the northbound lane and that he drove around the accident on that graveled area.

Defendant's driver, York, the only witness to the accident, did not take the stand at trial. The Asheville police officer who was called to the scene of the accident testified as to York's statement as follows:

This is in my own words. I don't recall exactly what [York] said. He advised me that he was proceeding north on 25-A.

CASEY v. FREDRICKSON MOTOR EXPRESS CORP.

[97 N.C. App. 49 (1990)]

He had just come out of a curve northbound when he observed a white vehicle that was traveling southbound run off the road through his lane at approximately the area of 123 Sweeten Creek Road. He observed this vehicle cross over and turn facing — almost facing him, still facing him somewhat southbound.

According to the officer, York further stated that he tried to swerve to his left to go around the vehicle and, upon seeing that the vehicle was moving back into its own, southbound lane of travel, he tried to go back into his northbound lane but instead collided with plaintiff's vehicle approximately in the center of the road. York showed the officer a set of skid marks where plaintiff allegedly ran off the road. It was the same set of marks identified by Demetrius as having been made by him when he skidded off the road to avoid the accident. Finally, the officer testified that there were approximately one hundred and seven feet of skid marks leading up to the tractor-trailer; almost all of those marks were in the truck's own, northbound lane of travel.

On the issues of the nature of plaintiff's injury and causation, Dr. Schulhof testified that there was no sign of trauma to plaintiff's head, that there were some cuts on his face but no skull fracture. Dr. Schulhof's pre-surgery diagnosis was that the hemorrhage in plaintiff's brain was the result of an abnormality, because its position was not typical for a hemorrhage due to a blow to the head. His post-operative opinion was the same: that the hemorrhage had occurred "spontaneously" and not as a result of a traumatic blow to the head. He testified, "I don't believe I can say with any certainty as to whether the hemorrhage or the blood clot was caused by the effects of the trauma itself. I think the evidence is very strong that it was a result of a hemorrhage from the blood vessel abnormality, if you understand my distinction there." Plaintiff also introduced testimony from a pathologist who testified that he did not think that the hemorrhage resulted from an arteriovenous malformation that ruptured on its own. Defendant introduced expert testimony agreeing with Dr. Schulhof's diagnosis of a spontaneous rupture.

At the charge conference and again at the conclusion of the court's charge to the jury but before the jury began deliberating, plaintiff requested an instruction on proximate cause in accordance with Pattern Jury Instruction 102.20A, "Proximate Cause — Peculiar Susceptibility ('Thin-Skulled' Plaintiff)." The trial court denied the

requests. The court also denied plaintiff's requests for an instruction on the doctrine of last clear chance. Over plaintiff's objections, the trial court instructed the jury on the doctrine of sudden emergency.

[1] The jury returned a verdict finding that plaintiff was not injured by the negligence of defendant. Plaintiff appeals, assigning as error the trial court's refusal to instruct the jury on the thin-skulled plaintiff rule and on the doctrine of last clear chance. Plaintiff also assigns error to the trial court's instructing the jury on the doctrine of sudden emergency. We agree that the court's refusal to instruct the jury on the thin skull rule was reversible error.

The thin skull rule is the rule of law that a negligent defendant takes the plaintiff as he finds him and, therefore, is liable for the harmful consequences of his negligent act notwithstanding the fact that the damages were unusually extensive because of the plaintiff's peculiar susceptibility or pre-existing condition. *See Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E.2d 541 (1964). The instruction requested by plaintiff is set forth in North Carolina Pattern Instruction — Civil 102.20(A) as follows:

> *In this case, the defendant contends, and the plaintiff denies, that plaintiff's injury was not reasonably foreseeable and, that, therefore, the defendant's conduct could not be a proximate cause of plaintiff's injury.*
>
> When a defendant's negligent conduct would not have resulted in any injury to a plaintiff of ordinary susceptibility, the defendant would not be liable for the harmful consequences which result from the plaintiff's peculiar susceptibilities, such as a pre-existing disease or an extraordinary condition, unless, under the circumstances, the defendant knew or should have known of such peculiar condition. However, if the negligent conduct of the defendant would have resulted in any injury to a person of ordinary susceptibility, the defendant would be liable for all the harmful consequences which occur — even though these harmful consequences may be unusually extensive because of a pre-existing or an extraordinary condition. (Emphasis added.) (Footnotes omitted.)

Defendant argues that the instruction requested by plaintiff was not applicable in this case because defendant did not contend that plaintiff's injuries were not reasonably foreseeable. Rather,

it was defendant's contention at trial that York's negligence did not cause the collision and, even if it did, the collision did not cause the hemorrhage in plaintiff's brain, as the vessel abnormality ruptured spontaneously and not as a result of any trauma sustained in the accident. While we agree that the defendant's contentions differ from the pattern instruction's prefatory language regarding foreseeability, we nonetheless believe the facts below support a thin-skulled plaintiff instruction. The introductory comments to the North Carolina Pattern Jury Instructions state that "(t)hese instructions do not eliminate the need to individually tailor each charge to the given factual situation and to comply with Rule 51(a) of the North Carolina Rules of Civil Procedure." Thus, although there was evidence which would support a jury finding either that York was not negligent or that York's negligence did not cause plaintiff's brain damage, the evidence would also support a finding of liability despite the fact that plaintiff's injuries also resulted from a pre-existing congenital defect unknown to anyone. Defendant concedes in its Brief that the thin skull rule would be relevant to the issue of damages. The question that is raised is whether the trial court's error in failing to instruct the jury on the rule is rendered moot because of the jury's verdict on the issue of negligence.

The jury responded "No" to the first issue, which read: "Was the plaintiff, Kelly Robert Casey, injured by the negligence of the defendant, Fredrickson Motor Express Corporation?" Thus, the jury could have found either York was not negligent or that York's negligence was not the proximate cause of plaintiff's injuries. We hold that the rule is relevant to the issue of proximate cause and that plaintiff could have been prejudiced by the court's refusal to give the instruction. See Prosser and Keeton, The Law of Torts § 43 (5th ed. 1984).

Defendant argues that there was evidence that plaintiff also suffered a broken leg and kneecap in the collision. Therefore, defendant contends, the fact that the jury was not instructed that defendant could be liable despite plaintiff's unknown pre-existing condition could not have affected defendant's liability for plaintiff's other injuries, and therefore the jury must have found defendant not negligent. We do not believe that argument is valid in the case before us. Plaintiff contends that he presented evidence of his brain injury only. Defendant responds that defendant's Exhibit 28 shows that there was evidence that plaintiff suffered the other

injuries. The record shows defendant's Exhibit 28 to be an enlarged photocopy of Dr. Schulhof's report at Memorial Mission Hospital. That report consists of a full page of information, including the following: "Left mid shaft transverse femur fracture, closed" and "Left transverse patellar fracture, open." However, defendant has failed to show that its Exhibit 28 was read or shown to the jury or that the information was otherwise placed before the jury. Under the circumstances, we do not believe that the record before us mandates the conclusion that the jury found that defendant was not negligent. The evidence below supports an instruction on the thin-skulled plaintiff doctrine, and the trial court erred in failing to give it.

[2] We now address two issues likely to arise on retrial. Plaintiff contends the trial court erred in refusing to instruct the jury on the doctrine of last clear chance. The doctrine of last clear chance is "but an application of the doctrine of proximate cause." *Exum v. Boyles*, 272 N.C. 567, 578, 158 S.E.2d 845, 854 (1968). For the last clear chance doctrine to apply, there must be evidence "that after the plaintiff had, by his own negligence, gotten into a position of helpless peril (or into a position of peril to which he was inadvertent), the defendant discovered the plaintiff's helpless peril (or inadvertence), or, being under a duty to do so, should have, and, thereafter, the defendant, having the means and the time to avoid the injury, negligently failed to do so." *Id.* at 576, 158 S.E.2d at 853.

Plaintiff contends that sufficient evidence of defendant's last clear chance to avoid injuring plaintiff was presented through York's statement to the police officer and the expert testimony of Ronald Nichols. York stated that he had just come out of a curve when he observed plaintiff's vehicle run off the road through York's lane of travel, that York swerved to his left to avoid plaintiff, but that plaintiff then crossed over and began moving back into his own, southbound lane of travel, and that York then attempted to go back into his northbound lane but instead collided with plaintiff. Nichols, who was qualified by the trial court as an expert in the handling and maneuvering of eighteen-wheeled tractor-trailers, testified that drivers are never instructed to cross the center line and move to the left to avoid an accident and that defendant had enough room on the right to move to the right. Furthermore, Nichols testified that York improperly applied his brakes so as to lock the wheels, thereby taking a greater distance to stop his vehicle than otherwise required. Plaintiff contends that this evidence is

sufficient to show that defendant had the "time and the means" to avoid injuring plaintiff. We do not agree.

Plaintiff bore the burden of proof on this issue. *Vernon v. Crist*, 291 N.C. 646, 654, 231 S.E.2d 591, 596 (1977). There was no evidence of the speed of the tractor-trailer nor was there evidence that York did not slow down when he saw plaintiff run off the road. There was evidence that York swerved into the left lane in order to avoid plaintiff, who had run off the highway to the graveled area to the right of York's lane of travel. There was evidence that York locked his brakes and that the tractor-trailer skidded for 107 feet, but there was no evidence that York had sufficient time to respond otherwise to a vehicle traveling toward him out of control. Although plaintiff argues that York first saw plaintiff run off the road when York "had just come out of" a curve some 800 feet away, there is no evidence in the record of that precise distance, nor is there evidence of how far York was from plaintiff when plaintiff turned his vehicle back onto the highway. Furthermore, the opportunity to avoid the accident was equally available to plaintiff, who, having run off the highway, then pulled back onto the highway in front of York. We therefore hold that the trial court correctly concluded that plaintiff's evidence below did not create a question for the jury on the issue of last clear chance.

[3] We further hold that the trial court correctly instructed the jury on the doctrine of sudden emergency. That rule of law provides that one who is faced with a sudden emergency is not required to exercise the same standard of care as he might be required to exercise if he had more time to respond to the danger before him. *White v. Greer*, 55 N.C. App. 450, 285 S.E.2d 848 (1982). According to York's statement to the police officer, York was faced with a situation in which an oncoming vehicle had run off the road in front of him and then had pulled back onto the highway into York's lane of travel. This evidence was sufficient to support an instruction to the jury on the sudden emergency doctrine.

Because the trial court failed to instruct the jury on the thin skull doctrine, we hold that plaintiff is entitled to a

New trial.

Judges JOHNSON and GREENE concur.