WESTON v. DANIELS

[114 N.C. App. 418 (1994)]

━━━━━━━━━━━━

WILLIAM A. WESTON, JR., PLAINTIFF v. CHRISTOPHER C. DANIELS AND DANIELS ALIGNMENT, INC., DEFENDANTS

No. 9210SC653

(Filed 19 April 1994)

**1. Automobiles and Other Vehicles § 466 (NCI4th) — auto accident — fog — sudden emergency — not applicable**

The trial court erred by instructing on sudden emergency in an automobile accident case where defendant ran through an intersection in fog, crashed through an embankment into a tree, and plaintiff, who was riding with defendant, was injured. It is apparent that there was fog in the area the entire time that defendant was driving that morning; the fact that patchy fog continued to create a problem and obscured defend-

**WESTON v. DANIELS**

[114 N.C. App. 418 (1994)]

ant's clear view of the intersection was neither sudden nor an emergency. Defendant could easily have anticipated that the threat of hazardous fog conditions would continue in light of the previous four miles of foggy conditions; he was aware of the upcoming stop and did not brake until he actually saw the sign.

**Am Jur 2d, Automobiles and Highway Traffic § 421.**

2. **Evidence and Witnesses § 3068 (NCI4th)— automobile accident—cross-examination of plaintiff—previous lawsuit—cheating in fishing tournament**

The trial court abused its discretion in an automobile accident case by allowing plaintiff to be questioned regarding a lawsuit in which plaintiff participated in 1979 regarding an incident which occurred in 1977. Plaintiff's testimony denying cheating in a fishing tournament (apparently the subject of the suit) clearly denied specific conduct, but the defense recalled plaintiff for the express purpose of further questioning regarding this conduct, read from the complaint, depositions, and court rulings, and asked over sixty questions referencing the action. These inquiries related to an extremely remote event, were minimally probative compared to their prejudicial effect, and reflected the harassment and needless consumption of time which N.C.G.S. § 8C-1, Rule 611(a) prohibits. N.C.G.S. § 8C-1, Rules 608(b) and 403.

**Am Jur 2d, Witnesses §§ 901-904, 968, 969.**

Appeal by plaintiff from order entered 8 November 1991 by Judge Dexter V. Brooks in Wake County Superior Court. Heard in the Court of Appeals 24 May 1993.

This case arises out of a civil action filed in Wake County on 18 June 1990. The plaintiff, William Weston, instituted suit against the defendant, Christopher Daniels, alleging that he was negligent in the operation of a vehicle in which the plaintiff was a passenger. The defendant denied any negligence and raised several affirmative defenses, including the doctrine of sudden emergency.

Trial began on 9 September 1991. At the close of all the evidence, plaintiff moved for directed verdict on the defense of sudden emergency. The motion was denied by the court, and the jury was given an instruction on sudden emergency. After deliberation,

the jury returned a verdict in favor of the defendant. The plaintiff moved for judgment notwithstanding the verdict and alternatively, a new trial. Both motions were denied. Plaintiff appeals from the entry of judgment finding no negligence.

*Crisp, Davis, Schwentker, Page, Currin & Nichols, by Cynthia M. Currin and Elizabeth T. Dierdorf, for plaintiff-appellant.*

*Broughton, Wilkins, Webb & Jernigan, by Charles P. Wilkins and Roy J. Baroff; and Petree, Stockton & Robinson, by M. Gray Styers, for defendant-appellees.*

ORR, Judge.

[1] The plaintiff appeals from the jury verdict and raises six assignments of error. Four of those issues involve the trial court's denials of a directed verdict, judgment notwithstanding the verdict, and motion for a new trial. The gravamen of these arguments is that there was insufficient evidence of a sudden emergency to warrant application of the doctrine for the jury's consideration. Plaintiff argues that the fog that appeared in the intersection just prior to the accident was neither sudden nor did it create an emergency previously unknown to the defendant. We agree and accordingly reverse the verdict in favor of the defendants and remand for a new trial.

The doctrine of sudden emergency applies when a defendant is confronted by an emergency situation not of his own making and requires defendant only to act as a reasonable person would react to similar emergency circumstances. *Massengill v. Starling,* 87 N.C. App. 233, 360 S.E.2d 512 (1987). The defendant is not to be held liable for failure to act as a calm, detached reflection as a later date would dictate. *Id.* at 236, 360 S.E.2d at 514.

An "emergency situation" has been defined by our courts as that which "compels [defendant] to act instantly to avoid a collision or injury . . . ." For the doctrine to apply, the jury must first find that "in fact a sudden emergency did exist" and second, that "the emergency was in fact not brought on by the negligence of the defendant."

*Keith v. Polier,* 109 N.C. App. 94, 98-99, 425 S.E.2d 723, 726 (1993) (citations omitted).

## WESTON v. DANIELS

[114 N.C. App. 418 (1994)]

However, the doctrine of sudden emergency is not available to a defendant if the defendant's own negligence or wrongful act caused the emergency in whole or in material part. *Moreau v. Hill*, 111 N.C. App. 679, 433 S.E.2d 10 (1993), quoting *Gupton by Gupton v. McCombs*, 74 N.C. App. 547, 328 S.E.2d 886, *disc. review denied*, 314 N.C. 329, 333 S.E.2d 486 (1985).

In the case *sub judice*, the evidence presented at trial tended to show that during the early morning of 15 September 1987, the plaintiff and defendant were traveling through rural Wake County en route to a fishing trip at Kerr Lake. The Chevrolet Suburban driven by defendant was towing a boat and trailer. At the time that defendant picked up plaintiff at approximately 5:00 a.m., there was dense fog throughout the area. The plaintiff and defendant traveled down Highway 70 onto Jones Sausage Road. The fog continued and was variously described at trial by plaintiff and defendant as "thick", "intermittent", "real soupy", and "patchy" prior to the accident. Both men also testified that the roads were wet that morning. The State Highway Patrol officer who investigated the accident testified that, "It was pretty much foggy everywhere in that area. It was foggy back down Jones Sausage; and it was foggy on Rock Quarry, both directions."

The parties continued down Jones Sausage Road toward a "T" intersection with Rock Quarry Road, which had a downhill grade. The defendant picked up speed as he approached the intersection. Defendant testified that he traveled the road often, that he was aware of the upcoming intersection, and was also aware that there was a stop sign at the intersection. Even so, the fog thickened as the parties approached, and the defendant did not stop at the stop sign. The automobile crashed into the woods through an embankment on the opposite side of the intersection, finally stopping when it struck a tree. The boat then left the trailer and rammed into the Suburban, causing a second impact. The accident occurred at 5:15 a.m., only four miles from the tackle shop where the defendant had earlier picked up the plaintiff.

From the above evidence, it is apparent that there was fog in the area the entire time that the defendant was driving the automobile that morning. The fact that patchy fog continued to create a problem in driving conditions, and that fog obscured the defendant's clear view of the intersection was neither sudden nor an emergency situation. "As a general rule, every motorist driving

upon the highways of this state is bound to a minimal duty of care to keep a reasonable and proper lookout in the direction of travel and see what he ought to see." *Keith* at 99, 425 S.E.2d at 726, quoting *Lawson v. Walker*, 22 N.C. App. 295, 297, 206 S.E.2d 325, 327 (1974). "Within this duty is a requirement that the motorist drive and anticipate dangers in a manner consistent with the circumstances . . . ." *Id.*

Under the facts of this case, the defendant could easily anticipate that the threat of hazardous fog conditions would continue in light of the previous four miles of foggy conditions. The defendant was not entitled to instructions on the defense of sudden emergency where there was no evidence presented of any road condition or highway exigency that had not existed since the beginning of the trip. The evidence presented at best showed that at the bottom of the hill there were more of the same foggy conditions of which the defendant was already aware. The defendant was aware of the upcoming stop and did not brake until he actually saw the sign. We find that the trial court's instruction on the doctrine of sudden emergency constituted prejudicial error and accordingly, that the plaintiff is entitled to a new trial on this basis.

[2] In his second assignment of error, the plaintiff argues that the trial court abused its discretion in allowing the defendant to challenge the plaintiff's credibility by questioning him regarding a lawsuit in which the plaintiff participated in 1979. We agree. The 1979 action arose out of an incident occurring in 1977.

N.C. Gen. Stat. § 8C-1, Rule 608(b) provides in pertinent part:

*Specific incidents of conduct.* — Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, . . . .

The rule "is supplemented by more general rules requiring that 'probative value not be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury', and barring 'harassment and undue embarrassment' of the witness." K. Broun, *Brandis and Broun on North Carolina Evidence* § 97, 4th Ed. (1993).

WESTON v. DANIELS

[114 N.C. App. 418 (1994)]

In the case at bar, we find that the questioning of the plaintiff was improper under the Rules. Assuming without deciding that the plaintiff was under continuing cross-examination by the defendant when he was recalled, and therefore within the scope of Rule 608(b), the transcript reveals that the plaintiff had already testified as to the prior conduct and had denied any wrongdoing. During the defendant's first day of cross-examination of the plaintiff, the following exchange took place:

Q. Have you ever had any problems or disciplinary actions by [Bass Anglers Sportsman's Society]?

A. I haven't had any disciplinary problems with them, no.

Q. Have you ever had any problems with that society based on a fishing tournament up at Kerr Lake?

(Plaintiff's counsel objects, objection overruled)

Q. Mr. Weston, have you ever been disciplined by the B. A. S. S. for cheating in a fishing tournament?

A. No, sir.

Q. Never in your life?

A. No, sir.

These responses are clearly denials of specific conduct by the plaintiff. Nonetheless, the defense recalled the plaintiff for the express purpose of further questioning regarding the conduct of the plaintiff. During defense questioning, counsel read from the civil complaint, depositions, and rulings of the trial court.

While

[e]ffective cross-examination demands that some allowance be made for going into matters of this kind . . . safeguards are erected in the form of specific requirements that the instances inquired into be probative of truthfulness or its opposite and not remote in time. Also, the overriding protection of Rule 403 requires that the probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury, and that of Rule 611 bars harassment and undue embarrassment.

Rule 608, Advisory Committee Notes.

In the case at bar, counsel for the defendant asked over sixty questions referencing the action arising out of events occurring some twelve to fourteen years earlier. These inquiries related to an extremely remote event, they were minimally probative when compared to their prejudicial effect, and were therefore proscribed by Rule 403. Further, the continued repetitive questioning regarding the B. A. S. S. tournament reflects the harassment and "needless consumption of time" that Rule 611(a) prohibits.

Under the facts of this case, we find that the trial court abused his discretion in allowing the continuing examination of the plaintiff by the defense counsel regarding the allegations and subsequent suit. In any future trial on the merits of this case, such questioning, if any, should be limited by the trial court.

New trial.

Chief Judge ARNOLD and Judge MARTIN concur.