ETHEL LEE ALLEN TAYLOR, Plaintiff v. ANNIE MAE ELLERBY, Defendant

No. COA00-975

(Filed 4 September 2001)

## 1. Trials— automobile accident—verdict not contrary to evidence

The trial court did not abuse its discretion in an automobile accident case by denying plaintiff's Rule 59 motion for a new trial where plaintiff contended that the verdict was contrary to the evidence, but the jury finding was that plaintiff was not injured "as a result of the negligence of plaintiff" rather than "no injury." The evidence of causation was conflicting and plaintiff's testimony inconsistent; it cannot be concluded that the court's decision to defer to the jury's findings was a manifest abuse of discretion or probably amounted to a substantial miscarriage of justice.

**2. Trials— motion for new trial—nine-month delay in ruling**

The trial court did not abuse its discretion in an automobile accident case by taking nine months to rule on plaintiff's Rule 59 motion for a new trial where there was no indication that the court did not have a vivid recollection of the trial. The court had before it a letter from defendant reviewing the evidence and reminding the court that it had not ruled on the motion, as well as a detailed review of the evidence in plaintiff's original motion.

**3. Damages and Remedies— peculiar susceptibility instruction—pre-existing mental condition—distinction between injuries and damages**

The trial court did not err in an automobile accident case by giving the Pattern Jury Instruction on peculiar susceptibility due to a pre-existing physical condition but not an instruction on peculiar susceptibility due to a pre-existing mental condition. Although plaintiff contended that she suffered from mild mental retardation and was only capable of physical labor, so that her injuries left her unable to earn a living, there is a distinction between aggravation of an injury by a pre-existing mental condition and an increase in damages due to a pre-existing mental condition. Plaintiff never contended that her pre-existing condition aggravated the injuries she suffered to her neck, back, and knee, only that the pre-existing mental condition increased the special damages to which she was entitled.

Appeal by plaintiff from judgment entered 30 December 1998 by Judge William H. Helms in Anson County Superior Court. Heard in the Court of Appeals 7 June 2001.

*Poisson, Poisson, Bower & Clodfelter, by Fred D. Poisson, Jr., for plaintiff-appellant.*

*The Robinson Law Firm, PLLC, by William C. Robinson, for defendant-appellee.*

HUNTER, Judge.

Ethel Lee Allen Taylor ("plaintiff") appeals from a judgment entered following a jury trial in which plaintiff alleged she had suffered injuries in an automobile collision caused by the negligence of Annie Mae Ellerby ("defendant"). We find no error.

Plaintiff sets forth three assignments of error, accompanied by three corresponding arguments. First, plaintiff argues that the verdict returned by the jury was against the greater weight of the evidence presented at trial and should be set aside. After the judgment in favor of defendant was entered, plaintiff filed a "Motion for a New Trial" on 21 December 1998, requesting a new trial pursuant to N.C.R. Civ. P. 59 ("Rule 59"). This motion was eventually denied by order entered 9 September 1999 (approximately nine months later). Plaintiff requests that this Court reverse the trial court's order denying her motion for a new trial. It is well-established that a

> trial court's decision to exercise its discretion to grant or deny a Rule 59(a)(7) motion for a new trial for insufficiency of the evidence must be based on the greater weight of the evidence as observed firsthand only by the trial court. The test for appellate review of a trial court's granting of a motion for a new trial due to insufficiency of the evidence continues to be simply whether the record affirmatively demonstrates an abuse of discretion by the trial court in doing so. . . .

*In re Buck*, 350 N.C. 621, 629, 516 S.E.2d 858, 863 (1999) (emphasis omitted). "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice," *Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982), and a "manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." *Id.* at 484-85, 290 S.E.2d at 604. Here, plaintiff bears the "heavy burden" of proving that the trial court abused its discretion by denying plaintiff's motion for a new trial.

[1] Plaintiff specifically argues that in failing to find that plaintiff suffered any injury, the jury returned a verdict that was contrary to all the evidence. We first note that, in fact, the jury did not return a verdict finding "no injury." Rather, the jury found that plaintiff was not injured "as a result of the negligence of the defendant." Thus, even if the evidence overwhelmingly established that plaintiff suffered from some injury, the jury's verdict would not necessarily be contrary to that evidence, since the jury could have concluded that plaintiff suffered injuries that were not caused by defendant's negligence. The issue, then, is whether the trial court's refusal to set aside the jury's verdict amounts to a substantial miscarriage of justice. We believe it does not.

At trial, plaintiff argued that she suffered from neck, back, and knee injuries as a result of the collision. While defendant admitted that she caused the accident by negligently pulling out in front of plaintiff, she specifically denied the existence of proximate cause of plaintiff's injuries and the existence of damages. The evidence presented at trial tended to show that Dr. Victoria Rommel first saw plaintiff as a patient on 12 January 1995, at which time she found that plaintiff was having some lower back pain with some tenderness to the sacroiliac joint. Dr. Rommel also noted that plaintiff, who weighed 246 pounds at the time, had gained 66 pounds over the course of two years. Dr. Rommel prescribed Zoloft for plaintiff because of her back pain, her premenstrual pain, her weight gain, and because she showed symptoms of depression.

On 16 February 1995, plaintiff and defendant had a "T-bone" collision on Highway 74 in Wadesboro, North Carolina, after defendant suddenly pulled out in front of plaintiff. Two police officers, Officers Pratt and Little, arrived on the scene after the collision to investigate. Officer Pratt testified at trial that plaintiff had a noticeable limp after the collision, and that she had told him that she hurt her leg. However, plaintiff refused Officer Pratt's offer to call an ambulance, and Officer Pratt failed to list any injuries sustained by plaintiff on the accident report filled out on the day of the collision.

On the day of the collision, plaintiff went to Anson County Hospital. The records from Anson County Hospital indicate that plaintiff complained primarily of sharp back pain radiating into the hip, beginning one hour after the car collision. Plaintiff did not report any knee pain or neck pain at the hospital, and there is no indication that a knee exam was performed. The doctors at the hospital performed a lumbar sacral spine film (an x-ray), and that test did not show any "disease." Plaintiff was diagnosed at the hospital as suffering from a lumbosacral sprain.

Plaintiff then visited Dr. Rommel on 21 February 1995, five days after the collision. During this visit, plaintiff complained of head, neck, shoulder and back pain and soreness. Plaintiff did not indicate that she suffered from any knee pain. Dr. Rommel found that plaintiff had a very limited range of motion in her neck, and that she was tender along the right side of her back and in her hips and legs. Dr. Rommel treated plaintiff for muscle or skeletal injuries by prescribing Flexeril, Percocet and Darvocet. Dr. Rommel also prescribed physical therapy. Dr. Rommel did not indicate any injury to plaintiff's knee.

Dr. Rommel saw plaintiff again on 24 February 1995, during which visit Dr. Rommel diagnosed plaintiff as suffering from a "hyper-extension" to her neck. Dr. Rommel did not diagnosis plaintiff as having any knee injury during this visit. Dr. Rommel saw plaintiff again on 3 March 1995. Plaintiff complained at that time of headaches and neck pain. There is no indication that plaintiff complained of knee pain at this time. Dr. Rommel concluded that plaintiff had not shown significant improvement by 3 March 1995 and that her muscular-skeletal injury was severe enough to require the help of a specialist. Dr. Rommel referred plaintiff to Carolina Bone and Joint for hyperextension of the neck.

Plaintiff was then treated by Dr. King at Carolina Bone and Joint on 7 March 1995. When plaintiff first visited the clinic, she was asked to report all the problems she had, and she indicated only pain in her neck and back, and not in her knee. Dr. King's notes of the initial visit did not indicate any complaints regarding a knee injury. In fact, during this first visit, Dr. King performed a reflex test on plaintiff's knees to check for back injury. This test involved the tapping of each knee on the patella with a rubber mallet in the area of the knee where surgery was subsequently performed. Dr. King did not note any knee pain during this test.

On 9 March 1995, plaintiff again visited Dr. Rommel's office and complained that her knee had been hurting since the accident, but had not become stiff and swollen until the previous day, 8 March 1995. Plaintiff was diagnosed by Dr. Rommel's assistant as suffering from right knee pain with swelling, and hyperextension injury of the neck. Plaintiff was then referred back to Carolina Bone and Joint, where she was treated by Dr. Meade. Thereafter, on 24 March 1995, plaintiff underwent arthroscopic surgery on her knee which revealed a "divot" injury in the articular cartilage under the kneecap. Dr. Rommel next saw plaintiff on 4 April 1995, after her surgery. At that time Dr. Rommel noticed that plaintiff had "much improvement" in her neck and a much better range of motion in her neck. On 24 May 1995, Dr. Rommel again saw plaintiff and made notes regarding her neck injury, but did not make notes regarding her knee.

As to the issue of causation, Dr. Rommel opined that plaintiff's knee injury and her hyperextension of the neck injury were caused by the collision. Dr. Rommel testified that, in cases of neck injuries resulting from car accidents, victims often feel fine immediately after the accident and believe there is no reason to seek medical help. Subsequently, it is not uncommon for the victim to begin to feel pain

a day or two later when the muscles begin to tighten up and the injury becomes more apparent. Dr. Rommel also testified that a twenty-day period is a reasonable period of time for an inflammation to take place following a trauma.

Dr. Meade, who performed the arthroscopic surgery, testified that he found three things wrong with plaintiff's knee. First, plaintiff had a "fresh injury underneath her patella," and, in Dr. Meade's opinion, this injury was consistent with a dashboard injury, because it would require a direct blow with some great force. However, Dr. Meade conceded that he had no way to know what type of trauma had, in fact, caused the injury to plaintiff's knee and that typically such an injury would cause a patient immediate pain. Second, Dr. Meade testified that plaintiff showed some "wear and tear" to her knee that was somewhat greater than the average person, and that this "wear and tear" could have been caused by plaintiff's excessive weight. Finally, Dr. Meade acknowledged that plaintiff was born with a subluxed knee and admitted that this pre-existing condition could, on its own, cause a patient pain, restriction in motion, and loss of function.

In sum, the evidence tended to show that plaintiff suffered some back and neck pain immediately following the collision, but that plaintiff also suffered some lower back pain for which she had sought treatment by Dr. Rommel as recently as a month before the accident. Further, plaintiff's knee injury did not manifest itself until approximately twenty days after the accident, although Dr. Meade testified that an injury of this sort would typically cause a patient immediate pain.

Furthermore, there is evidence in the record calling into doubt plaintiff's credibility. For example, plaintiff's own doctor, Dr. Rommel, testified that plaintiff's testimony at trial, that she is sure that she hit her knee on the dashboard, was inconsistent with Dr. Rommel's notes from her first examination of plaintiff, five days after the collision, indicating that plaintiff stated that she did not know "what hit what." Also, plaintiff testified at trial that when she originally went to Anson County Hospital, she reported pain in her neck, leg and thigh; however, Dr. Rommel testified that the emergency room notes indicated that plaintiff did not report any pain in her neck.

Due to the conflicting nature of the evidence on causation, and due to the inconsistency of the testimony offered by plaintiff, "we

cannot conclude that the trial court's decision to defer to the finality and sanctity of the jury's findings was a manifest abuse of discretion or probably amounted to a substantial miscarriage of justice." *Pearce v. Fletcher*, 74 N.C. App. 543, 546, 328 S.E.2d 889, 891 (1985). This assignment of error is overruled.

**[2]** In her second argument, plaintiff asserts that the trial court abused its discretion by taking approximately nine months to rule upon her motion for a new trial. At the outset, we acknowledge a general preference that rulings upon motions to set aside jury verdicts be made during the session in which a case has been tried. *See Goldston v. Chambers*, 272 N.C. 53, 56-57, 157 S.E.2d 676, 679 (1967) (quoting *Knowles v. Savage*, 140 N.C. 372, 374, 52 S.E. 930, 931 (1906)). (". . . 'Hearing and determining a motion to set the verdict aside . . . involv[es] . . . incidents of the trial not likely to be impressed upon the memory of the judge that he may safely act upon them after adjournment. . . .' ") However, a ruling on a motion to set aside a verdict, even where such ruling is entered after a significant delay, will not be reversed on appeal absent an abuse of discretion. *See State v. Smith*, 138 N.C. App. 605, 610, 532 S.E.2d 235, 239 (2000).

In support of her argument that the trial court's delay amounts to an abuse of discretion, plaintiff relies upon *Smith*, 138 N.C. App. 605, 532 S.E.2d 235, in which this Court held that the trial court's decision to deny a motion to set aside the verdict was an abuse of discretion. *Smith* is distinguishable because, in that case, this Court placed significant reliance upon the fact that the trial court admitted at a hearing that it had only a vague recollection of the case and of the trial. *Id.* at 611-12, 532 S.E.2d at 240. There is no indication in the case at bar that the trial court did not have a vivid recollection of the trial. In fact, at the time the trial court entered its order on 9 September 1999, it had before it a letter from counsel for defendant reviewing the evidence presented at trial and reminding the trial court that it had yet to rule on plaintiff's motion, as well as a letter from counsel for plaintiff referring the trial court to plaintiff's original motion for a new trial. Plaintiff's original motion, which is over five pages in length, contains a detailed review of the evidence presented at trial, and sets forth extensive legal arguments and case law citations in support of plaintiff's motion. We do not believe plaintiff has satisfied her burden of showing that the length of the trial court's delay in ruling upon her motion constituted an abuse of discretion. This assignment of error is overruled.

**[3]** Plaintiff's final argument pertains to the trial court's instruction on "peculiar susceptibility." At trial, plaintiff requested that the trial court instruct the jury using North Carolina Pattern Jury Instruction 102.20, which is entitled "Proximate Cause—Peculiar Susceptibility." This instruction provides, in pertinent part:

> In deciding whether the injury to the plaintiff was a reasonably foreseeable consequence of the defendant's negligence, you must determine whether such negligent conduct, under the same or similar circumstances, could reasonably have been expected to injure a person of ordinary [physical] [mental] condition. If so, the harmful consequences resulting from the defendant's negligence would be reasonably foreseeable and, therefore, would be a proximate cause of the plaintiff's injury. If not, the harmful consequences resulting from the defendant's negligence would not be reasonably foreseeable and, therefore, would not be a proximate cause of the plaintiff's injury.
>
> . . . .
>
> Under such circumstances, the defendant would be liable for all harmful consequences which occur, even though these harmful consequences may be unusually extensive because of the peculiar or abnormal [physical] [mental] condition which happens to be present in the plaintiff.

N.C.P.I., Civ. 102.20 ("P.I. 102.20") (footnotes omitted) (either term in brackets or both may be used depending upon the facts of the case). Plaintiff argued to the court during the trial that this instruction was warranted on two independent grounds. First, plaintiff argued that "the mental aspect of the case . . . has affected [plaintiff's] employability." Second, plaintiff argued that "the [knee] surgery . . . [was] to correct a congenital defect which needs to be corrected because of the injury," and that "[plaintiff's] weight makes her more susceptible to problems secondary to this accident." The trial court agreed to give the instruction. When the trial court read the instruction to the jury during the jury charge, the court used only the word "physical," and not the word "mental," at the two places in the instruction where the words physical and/or mental may be inserted. Immediately after the charge, counsel for plaintiff requested the court to correct the charge on peculiar susceptibility, arguing that the evidence established that "one of the handicaps which this lady had in being able to return to work or even why she is disabled has got a mental component to it,

and . . . that's why she cannot retrain." The court refused to alter the instruction to include the word "mental."

On appeal, plaintiff argues that the trial court's failure to include the word "mental" in its jury charge on peculiar susceptibility undermined plaintiff's case for damages, based on the following reasoning: plaintiff suffers from mild mental retardation and is only capable of physical labor employment; plaintiff's physical injuries caused by the collision prevent her from engaging in this kind of employment; plaintiff's projected damages of $388,732.00 were based on the contention that she is now completely unable to earn a living because she cannot perform physical labor employment. Plaintiff contends that the court's instruction, omitting the word "mental," constitutes reversible error because it made plaintiff's projected damages appear "overreaching" to the jury, left the jury "without guidance as to how to treat the pre-existing mental retardation on the issue of damages," and prejudiced the jury in defendant's favor.

In general, where the facts of a case warrant a jury instruction on peculiar susceptibility, and where the trial court fails to charge the jury accordingly, such failure may constitute reversible error. *See Casey v. Fredrickson Motor Express Corp.*, 97 N.C. App. 49, 387 S.E.2d 177, *disc. review denied*, 326 N.C. 594, 393 S.E.2d 874 (1990). This is so even if the jury (as it did here) returns a verdict finding that the plaintiff was not injured by the negligence of the defendant. *See id.* This is because, as we explained in *Casey*, the "peculiar susceptibility" doctrine (also referred to as the "thin skull" rule) is relevant to the issue of proximate causation, and a finding by a jury that the plaintiff was not injured by the negligence of the defendant implies that the jury may have concluded that the defendant was negligent, but that such negligence did not proximately cause the plaintiff's injuries. *See id.* at 54, 387 S.E.2d at 180. Thus, if the facts in the instant case warranted a jury instruction on peculiar susceptibility due to a pre-existing mental condition, the trial court's failure to instruct the jury accordingly would constitute reversible error, and such error would not be rendered moot by the fact that the jury concluded that plaintiff was not injured by the negligence of defendant. However, we believe that plaintiff's arguments regarding the relevance of her mental condition to this action do not warrant a jury instruction on peculiar susceptibility due to a pre-existing mental condition.

We believe that plaintiff has confused the role that a pre-existing mental condition can play in aggravating an *injury* suffered by the

plaintiff, with the role that a pre-existing mental condition can play in aggravating, or increasing, the amount of the *damages* suffered by the plaintiff, and we believe the difference between these two concepts is crucial. The "peculiar susceptibility" doctrine provides that:

> [A] negligent defendant is subject to liability for harm to the plaintiff although a physical [or mental] condition of plaintiff which is neither known nor should be known to defendant makes the *injury* greater than that which defendant as a reasonable man should have foreseen as a probable result of his conduct. . . .

*Lee v. Regan*, 47 N.C. App. 544, 550, 267 S.E.2d 909, 912, *disc. review denied*, 301 N.C. 92, 273 S.E.2d 299 (1980) (emphasis added) (citing Restatement of Torts 2d § 461 (1965)); *see also Potts v. Howser*, 274 N.C. 49, 53, 161 S.E.2d 737, 741 (1968) (holding that where plaintiff's *injuries* are aggravated or activated by a pre-existing physical or mental condition, defendant is liable to the extent that his wrongful act proximately and naturally aggravated or activated plaintiff's condition). This rule has been applied by our Courts on numerous occasions. *See, e.g., Lee*, 47 N.C. App. at 550, 267 S.E.2d at 911-12 (where plaintiff's pre-existing syringomyelia is aggravated by a collision which resulted from the negligence of defendant, defendant is liable for the damages due to any enhancement or aggravation of plaintiff's condition); *Poole v. Copland, Inc.*, 348 N.C. 260, 498 S.E.2d 602 (1998) (defendant is liable for all mental injuries resulting from defendant's harassment of plaintiff, even where such injuries result in part from plaintiff's pre-existing susceptibility to matters that cause severe emotional distress); *Holtman v. Reese*, 119 N.C. App. 747, 750, 460 S.E.2d 338, 341 (1995) (plaintiff can recover against defendant for all injuries resulting from accident, including injuries caused in part by plaintiff's pre-existing soft-tissue neck injuries). As indicated by P.I. 102.20, the doctrine applies "[i]n deciding whether the *injury* to the plaintiff was a reasonably foreseeable consequence of the defendant's negligence." N.C.P.I., Civ. 102.20 (emphasis added).

Here, plaintiff has never contended that the presence of her pre-existing mental condition aggravated the *injuries* she allegedly suffered from the collision (namely neck, back and knee injuries). Rather, plaintiff has alleged only that the presence of her pre-existing mental condition, when combined with her alleged physical injuries, aggravated or increased the amount of the *damages* to which she is entitled (based on the contention that an inability to perform physical labor has a greater impact on plaintiff's ability to earn a living than it

would in the case of a plaintiff without a similar mental condition). Thus, although it is clear that a plaintiff's pre-existing mental condition can, in some situations, be relevant to the issue of proximate causation (thereby warranting a jury instruction on peculiar susceptibility due to a pre-existing mental condition), plaintiff's argument here regarding her pre-existing mental condition is not, in fact, relevant to the issue of proximate causation; rather, it is an argument addressing the special damages to which plaintiff contends she is entitled. By way of comparison, plaintiff's arguments regarding her alleged pre-existing knee injury and weight condition were relevant to the issue of proximate causation, because under the "thin skull" rule, defendant could be liable for all physical injuries resulting from the collision even if such injuries were more extensive than they would otherwise have been due to plaintiff's pre-existing physical conditions. For this reason, the trial court properly instructed the jury on "peculiar susceptibility" due to a pre-existing physical condition. However, plaintiff was not entitled to a jury instruction on peculiar susceptibility due to a pre-existing mental condition, and the trial court did not err in refusing to give such an instruction. This assignment of error is overruled.

For the reasons set forth above, we find no error in the trial.

No error.

Judges MARTIN and HUDSON concur.