IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-553

No. COA21-630

Filed 16 August 2022

North Carolina Industrial Commission, I.C. Nos. TA-26216 & TA-27059

Estate of KIE LANDON JOHNSON, by and through WILLIAM JOHNSON and
MONA ELLISON, Administrators of the Estate, Plaintiffs,

v.

GUILFORD COUNTY BOARD OF EDUCATION, Defendant.

---

OLIVIA BROWN, by and through her GUARDIAN AD LITEM, EMILY HOEPFL,
and EMILY HOEPFL, Individually, Plaintiffs,

v.

GUILFORD COUNTY BOARD OF EDUCATION, Defendant.

Appeal by Plaintiffs from decision and order entered 10 June 2021 by the Full
Commission of the North Carolina Industrial Commission. Heard in the Court of
Appeals 10 May 2022.

*Frazier, Hill & Fury, R.L.L.P., by Torin L. Fury, and R. Steve Bowden &
Associate, P.C., by Edward P. Yount, for Plaintiffs-Appellants.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Carl
Newman, for Defendant-Appellee.*

INMAN, Judge.

¶ 1        This appeal arises out of a head-on collision between a car and a school bus on a rural road, which killed one passenger and injured others. Plaintiffs contend the Commission erred in concluding: (1) the bus driver was not negligent by application of the doctrine of sudden emergency; and (2) Plaintiffs failed to establish the bus driver had the last clear chance to avoid the collision. After careful review, we affirm the decision and order of the Commission.

## I.        FACTUAL & PROCEDURAL HISTORY

¶ 2        The record below tends to show the following:

¶ 3        On 26 August 2015, at approximately 4:30 p.m., Lakeisha Miller ("Ms. Miller") was driving a Guilford County school bus north on Knox Road, a two-lane road divided by a double yellow, no-passing center line in a rural part of Guilford County, when Jacob Larkin ("Mr. Larkin"), an 18-year-old high school student, drove in the wrong direction in Ms. Miller's lane and crashed his Toyota Camry head-on into the bus. The collision killed one of the car's passengers, Kie Johnson, and injured Mr. Larkin, the car's remaining passengers, including Olivia Brown, and Ms. Miller. At the time of the collision, Ms. Miller had one minor passenger on the bus. Mr. Larkin was impaired from a mixture of marijuana and Xanax, "was driving erratically," and had been "reckless" before the crash.

¶ 4        When Ms. Miller first saw Mr. Larkin's vehicle traveling toward her in the

wrong lane, she immediately took her foot off the gas pedal and slowed down to allow him to return to the correct lane. She sounded the bus's horn twice to alert the driver. As the car approached, Ms. Miller noticed that the driver was slumped over in the driver's seat and appeared to be reaching down, looking at the floor of his car. The shoulder of the road to the bus's right was wide and grassy but sloped down into a ditch. Ms. Miller considered turning right to avoid a collision but was worried the bus would overturn in the uneven ditch or crash into the fence running parallel to the road on the right. She could see there was no traffic behind Mr. Larkin, so "at the last minute," she maneuvered the bus left—toward the oncoming lane of traffic that the approaching car should have been in—to avoid the collision.

¶ 5     Ms. Miller had driven buses for Guilford County Schools for approximately ten years. She had obtained her commercial driver's license in 2005, completed the State's requisite training courses for school bus traffic and safety, and renewed her certification every few years. North Carolina school bus drivers are trained that when an approaching driver is in the wrong lane, that driver's natural response will be to return to his or her correct lane if the driver realizes what has happened and it may be best to move right. The instruction "Steering to Avoid A Crash" further provides: "Top heavy vehicles such as school buses may turn over . . . . If something is blocking your path, the best direction to steer will depend on the situation . . . . If the shoulder is clear, going right may be best." Knox Road was on Ms. Miller's regular

route for two to three years, and she had driven the road at least one hundred times, if not more.

¶ 6         On 11 April and 23 July 2018, Plaintiffs, administrators of Kie Johnson's estate and guardian for Olivia Brown, respectively, filed claims against the Guilford County Board of Education (the "Board") for $1,000,000 in damages under the Tort Claims Act with the North Carolina Industrial Commission.  Plaintiffs alleged: (1) Ms. Miller's maneuver of the school bus was not sufficient to avoid colliding with Mr. Larkin's vehicle; and (2) Ms. Miller was negligent when she failed to recognize the danger of Mr. Larkin's oncoming car, honk her horn to warn Mr. Larkin, maintain proper control of the school bus, maintain a proper lookout, and crossed left of center while operating the Board's bus.  The Board denied all allegations of negligence and raised defenses of (1) contributory negligence, (2) intervening, superseding, and criminal acts of Mr. Larkin, (3) intervening and superseding negligence and acts of the surviving car passengers, and third parties, and (4) the sudden emergency doctrine.

¶ 7         The matter was bifurcated on the issues of liability and damages, and these consolidated claims came on for trial before a Deputy Commissioner on 17 June 2019. The Deputy Commissioner denied Plaintiffs' claims and Plaintiffs appealed to the Full Commission (the "Commission").

¶ 8         Reviewing the evidence, the Commission concluded Ms. Miller's evasive

actions were proper and lawful because the bus was not left of the center yellow lines at the point of impact and, even if it was, Mr. Larkin's oncoming car was an obstruction that permitted Ms. Miller to deviate from the right lane of traffic. The Commission concluded Ms. Miller's actions were further insulated from liability under the doctrine of sudden emergency, and she "did not breach a duty of care owed to Plaintiffs." Even if Ms. Miller was negligent, the Commission alternatively concluded Plaintiffs were barred from recovery because they were contributorily negligent for "ignor[ing] unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety" and failing to leave Mr. Larkin's car when they had the opportunity prior to the collision. Finally, the Commission concluded that the Board was not liable under the doctrine of last clear chance because Plaintiffs "failed to prove that Ms. Miller was negligent in the operation of her school bus" and "that Ms. Miller, by the exercise of reasonable care, 'failed or refused to use every reasonable means' at her command to avoid the impending injury." Plaintiffs appeal.

## II.  ANALYSIS

### A. Standard of Review

¶ 9        We review the Commission's decision under the Tort Claims Act "'for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any

competent evidence to support them.'" *Simmons v. Columbus Cty. Bd. of Educ.*, 171 N.C. App. 725, 727-28, 615 S.E.2d 69, 72 (2005) (quoting N.C. Gen. Stat. § 143-293 (2003)). "As long as there is competent evidence in support of the Commission's decision, it does not matter that there is evidence supporting a contrary finding." *Id.* at 728, 615 S.E.2d at 72 (citation omitted). "Under the Tort Claims Act, when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision." *Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 589, 551 S.E.2d 486, 490 (2001) (quotation marks and citation omitted).

¶ 10 Where the Commission's factual findings are unchallenged, they are binding on appeal. *Medlin v. Weaver Cooke Constr., LLC*, 367 N.C. 414, 423, 760 S.E.2d 732, 738 (2014). "In addition, findings of fact to which error is assigned but which are not argued in the brief are deemed abandoned." *Strezinski v. City of Greensboro*, 187 N.C. App. 703, 706, 654 S.E.2d 263, 265 (2007) (citation omitted).

## B. The Doctrine of Sudden Emergency

¶ 11 Plaintiffs assert two challenges to the Commission's application of the sudden emergency doctrine: (1) Ms. Miller contributed to the sudden emergency by failing to exercise due care when she accelerated towards the collision and swerved left, in violation of her training; and (2) the oncoming collision did not require Ms. Miller to

act instantly by swerving. Neither argument is persuasive.

¶ 12 Plaintiffs have not challenged any of the Commission's findings of fact, so they are binding on this Court. *See Medlin*, 367 N.C. at 423, 760 S.E.2d at 738. Further, though Plaintiffs' proposed issues on appeal included challenges to findings 38 and 39, their brief does not challenge whether either finding is supported by competent evidence. Therefore, they have abandoned any challenge to these findings. *See Strezinski*, 187 N.C. App. at 706, 654 S.E.2d at 265.

¶ 13 We consider, based on the binding findings of fact and applicable law, whether the Commission erred in applying the doctrine of sudden emergency. *See Simmons*, 171 N.C. App. at 727, 615 S.E.2d at 72. For the reasons explained below, we affirm the Commission.

### 1. *The emergency compelled Ms. Miller to act instantly.*

¶ 14 Our courts have defined an emergency situation "as that which compels one to act instantly to avoid a collision or injury." *Keith v. Polier*, 109 N.C. App. 94, 98, 425 S.E.2d 723, 726 (1993) (cleaned up).

¶ 15 Plaintiffs contend the emergency did not require Ms. Miller to act instantly because she had between 10.9 and 15.6 seconds to react from the moment she first observed Mr. Larkin's vehicle in her lane until the point of impact. In its decision and order, the Commission explicitly considered the timing of the collision and described an accident reconstruction expert's testimony on this issue: "Ms. Miller had

*10.9 to 15.6 seconds to first perceive and react*, slow the bus to a stop, and then accelerate to impact speed[,]" and she "had 5 seconds from slowing the bus to the point of impact." (Emphasis added). The Commission further found that Ms. Miller had "less than five seconds" to act after realizing that the oncoming vehicle would not correct its path:

> 38. . . . . When it became apparent that Mr. Larkin was slumped over the steering wheel and Mr. Larkin would not return his vehicle to the proper lane, *Ms. Miller* had less than five seconds to choose to either (1) steer right and risk overturning the school bus in the ditch with her student passenger, or (2) steer left into the empty lane.

We are bound by the Commission's unchallenged findings, *Medlin*, 367 N.C. at 423, 760 S.E.2d at 738, and we will not reweigh the evidence, *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) ("[O]n appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight." (quotation marks and citation omitted)). *See also Simmons*, 171 N.C. App. at 728, 615 S.E.2d at 72.

¶ 16    Our Court has held that reacting in less than five seconds qualifies as acting "instantly" to avoid injury for the purposes of the sudden emergency doctrine. *See, e.g., Schaefer v. Wickstead*, 88 N.C. App. 468, 471-72, 363 S.E.2d 653, 655 (1988) (holding an instruction on the doctrine of sudden emergency was warranted when the defendant had between 4.55 and 5.5 seconds to avoid hitting a pedestrian with his

vehicle).

¶ 17     The decisions Plaintiffs cite—*Keith v. Polier*, 109 N.C. App. 94, 425 S.E.2d 723 (1993), and *Colvin v. Badgett*, 120 N.C. App. 810, 463 S.E.2d 778 (1995)—are factually distinguishable.  In *Keith*, we held the defendant was not entitled to the benefit of an instruction on the sudden emergency doctrine because the alleged emergency was not sudden where he rear-ended a car stopped at a traffic signal, 109 N.C. App. at 99-100, 425 S.E.2d at 726-27, and, in *Colvin*, we held that the driver's "fear and apprehension upon seeing his sister-in-law's truck on the side of the road, while understandable, did not give rise to a situation where he had to act instantly to avoid injury to himself or another" to warrant a jury instruction on the doctrine of sudden emergency, 120 N.C. App. at 812, 463 S.E.2d at 780.

¶ 18     The Commission properly concluded the emergency, created by Mr. Larkin driving in the wrong lane of travel, compelled Ms. Miller to act instantly, in less than five seconds, to avoid a head-on collision.  *See Schaefer*, 88 N.C. App. at 471-72, 363 S.E.2d at 655.

### 2. *Ms. Miller did not contribute to or cause the sudden emergency.*

¶ 19     "The doctrine of sudden emergency applies when a defendant is confronted with an emergency situation *not of his own making* and requires [a] defendant only to act as a reasonable person would react to similar emergency circumstances." *Weston v. Daniels*, 114 N.C. App. 418, 420, 442 S.E.2d 67, 71 (1994) (citation omitted)

(emphasis added). But a defendant shall not be "held liable for failure to act as a calm, detached reflection at a later date would dictate." *Id.* (citation omitted).

¶ 20 As an initial matter, the Board contends Plaintiffs have waived review of this challenge to the application of the sudden emergency doctrine—that Ms. Miller is not entitled to the defense because her negligence caused or contributed to the sudden emergency—because they did not present the specific challenge to the Commission on appeal from the Deputy Commissioner's decision and order. Assuming without deciding whether Plaintiffs preserved this issue for our review, we hold the Commission correctly concluded Ms. Miller's actions are insulated from liability under the doctrine of sudden emergency.

¶ 21 Plaintiffs disregard the Commission's binding findings that Ms. Miller did not cross the center, yellow line and that she acted reasonably in maneuvering the bus to the left:

> 23. . . . . The school bus is fully in its appropriate lane, angled slightly to the left, with its front left tire slightly over the nearest double yellow line but not across the second yellow line. Thus, based on the simulation, the point of impact is within Ms. Miller's lane of traffic with the front right of Mr. Larkin's car striking the front right of the school bus.
>
> 38. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds . . . that Ms. Miller, at the time, had to make an immediate decision when confronted with an impending collision. The Full Commission finds that, given the relatively short window

of time in which she had to react, Ms. Miller acted reasonably in her evasive maneuvers to avoid a collision with Mr. Larkin's vehicle. . . . Ms. Miller assessed what she thought was the best course of action based on her years of experience as a driver, her training, and familiarity with her school bus route. While it may be best to move the school bus right when a vehicle drifts into the path of a school bus, training materials acknowledge that there are times when going right is not possible. The Full Commission finds that Ms. Miller acted reasonably when she drove to the left in an attempt to avoid the collision with Mr. Larkin's car.

39. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that even if Ms. Miller's school bus crossed the double yellow line prior to the collision, doing so was reasonable given that Ms. Miller was attempting to avoid Mr. Larkin's vehicle.

These findings support the Commission's legal conclusion that Ms. Miller's actions are insulated from liability under the doctrine of sudden emergency. *See Fennell*, 145 N.C. App. at 589, 551 S.E.2d at 490.

Plaintiffs compare this case to several cases where a driver was precluded from invoking the sudden emergency doctrine because of their own negligence—for failure to travel at a safe speed, maintain control, or keep a proper lookout—because it contributed to the emergency. *See, e.g., Goins v. Time Warner Cable Se., LLC*, 258 N.C. App. 234, 238-40, 812 S.E.2d 723, 727-28 (2018) (cyclists were traveling too fast and failed to keep proper lookout for downed utility line in the roadway); *Sobczak v. Vorholt*, 181 N.C. App. 629, 639, 640 S.E.2d 805, 812 (2007) (driver was "on notice of

a potential encounter with ice" in snowy conditions); *Gupton v. McCombs*, 74 N.C. App. 547, 549-50, 328 S.E.2d 886, 888 (1985) (driver "failed to keep a vigilant lookout for the [pedestrian]" and sound her horn); *White v. Greer*, 55 N.C. App. 450, 454, 285 S.E.2d 848, 851-52 (1982) (motorcyclist failed to avoid a car turning left in the oncoming lane). Those cases are inapposite because, throughout the sequence of this collision, Ms. Miller drove the bus at a reasonable speed, maintained control of the bus, and kept a lookout for Mr. Larkin's vehicle and her surroundings.

¶ 23 In this case, Mr. Larkin created an emergency by traveling in the wrong lane toward a head-on collision with the school bus. *See, e.g., Casey v. Fredrickson Motor Express Corp.*, 97 N.C. App. 49, 56, 387 S.E.2d 177, 181 (1990) (holding evidence of an oncoming vehicle in the wrong lane of travel was sufficient to warrant a jury instruction on the sudden emergency doctrine). And Ms. Miller's subsequent actions did not contribute to or cause the sudden emergency. *See Weston*, 114 N.C. App. at 420, 442 S.E.2d at 71. When Ms. Miller first saw Mr. Larkin's vehicle in her lane, she immediately slowed the bus and honked her horn to warn the driver. Because Mr. Larkin did not return to the correct lane and Ms. Miller was concerned about the slope on the right shoulder of the roadway as well as the safety of the bus's remaining passenger, she accelerated to the left in her lane to avoid a collision. Ms. Miller did not cross the yellow line and school bus safety training materials "acknowledge that there are times when going right is not possible." She cannot be held liable "for failure

to act as a calm, detached" accident reconstruction expert with the benefit of hindsight. *Id.* (citation omitted).

¶ 24    Since Ms. Miller was compelled to act instantly and her actions did not contribute to the creation of the emergency, we hold the Commission appropriately applied the doctrine of sudden emergency and concluded the Board, through the actions of its employee Ms. Miller, was not negligent.

¶ 25    Because we affirm the Commission's conclusion that Ms. Miller was not negligent and Plaintiffs do not challenge the Commission's alternative conclusion that Plaintiffs' claims were further barred based on their own contributory negligence, we need not address Plaintiffs' remaining argument about the doctrine of last clear chance. *See Wray v. Hughes*, 44 N.C. App. 678, 684-85, 262 S.E.2d 307, 311 (1980) ("[W]here there is no evidence that [a] defendant failed to keep a reasonable lookout in the direction of travel or that a person exercising a proper lookout would have been able in the exercise of reasonable care to avoid the collision, the last clear chance doctrine does not apply." (citations omitted)).

## III.    CONCLUSION

¶ 26    For the reasons outlined above, we affirm the decision and order of the Commission.

AFFIRMED.

Judges ARROWOOD and WOOD concur.